1 | BRAD D. BRIAN (State Bar No. 079001)
  | Brad.Brian@mto.com
2 | TAMERLIN J. GODLEY (State Bar No. 194507)
  | Tamerlin.Godley@mto.com
3 | RICHARD C. CHEN (State Bar No. 270715)
  | Richard.Chen@mto.com
4 | MUNGER, TOLLES & OLSON LLP
  | 355 South Grand Avenue
5 | Thirty-Fifth Floor
  | Los Angeles, CA 90071-1560
6 | Telephone: (213) 683-9100
  | Facsimile: (213) 687-3702
7 |
  | Attorneys for Defendants
8 | BSI SA, F. DI PIETRO, B. AMMANN,
  | ASSICURAZIONI GENERALI, DAMIANO BRUSA,
9 | CMS VON ERLACH HENRICI AG

```
FILED
CLERK, U.S. DISTRICT COURT

NOV 1 8 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY
```

10 |                    UNITED STATES DISTRICT COURT

11 |                    CENTRAL DISTRICT OF CALIFORNIA

12 |                         WESTERN DIVISION

13 |

14 | HAIG KELEDJIAN, AS                    CASE NO. **CV10-8891** (R) (AJW)
   | ADMINISTRATOR WITH WILL
15 | ANNEXED OF THE ESTATE OF           **NOTICE OF REMOVAL OF**
   | HENRY WALLERS, DECEASED;           **ACTION UNDER 28 U.S.C. § 1441**
16 | HAIG KELEDJIAN, AS SUCCESSOR        **(DIVERSITY)**
   | TRUSTEE OF COVENTRY TRUST
17 | ENTERPRISE; HAIG KELEDJIAN,
   | AS SUCCESSOR TRUSTEE OF
18 | COVENTRY INTERNATIONAL,

19 |             Plaintiffs,

20 |      vs.

21 | BSI SA, a Swiss Banking corporation;
   | F. DI PIETRO, an individual; B.
22 | AMMANN, an individual;
   | ASSICURAZIONI GENERALI, a
23 | multinational organization; AGORA,
   | INC., a Delaware corporation;
24 | NICOLA BARANDUN, an individual;
   | BARANDUN HESS VON
25 | GRAFENRIED, a Swiss limited
   | liability partnership; DAMIANO
26 | BRUSA, an individual; CMS VON
   | ERLACH KLAINGUTI STETTLER
27 | WILLE, a Swiss limited liability
   | partnership; ANDREW GOODMAN,
28 | an individual; TAYLOR WESSING

12295964.4

1  LLP, an English limited liability
2  partnership and DOES 1 through 100,
   inclusive,
3
        Defendants.
4

5        TO THE CLERK OF THE UNITED STATES DISTRICT COURT

6  FOR THE CENTRAL DISTRICT OF CALIFORNIA:

7        PLEASE TAKE NOTICE that Defendants BSI SA ("BSI"), F. Di

8  Pietro, B. Ammann, Assicurazioni Generali ("Generali'), Damiano Brusa, and CMS

9  von Erlach Henrici AG[1] ("CMS"), joined by Agora, Inc., Nicola Barandun,

10 Barundun Hess von Grafenried ("BHVG"), Andrew Goodman, and Taylor Wessing

11 LLP (collectively "Defendants"), hereby remove to this Court the state court action

12 described below pursuant to 28 U.S.C. § 1441. This Court has original jurisdiction

13 over this suit based on diversity of citizenship under 28 U.S.C. § 1332.[2]

14                          The Complaint

15        1.    On or about September 16, 2010, Plaintiff Haig Keledjian filed

16 this action as Case Number BC445694 in the Superior Court for the State of

17 California, County of Los Angeles.

18        2.    Plaintiff brings this suit in his purported capacities as

19 administrator of the will of Henry Wallers, who died in 1993, and as the trustee of

20 two trusts set up by Mr. Wallers: Coventry Trust Enterprise and Coventry

21 International (the "Trusts"). Mr. Wallers, through his Trusts, deposited certain

22

23 [1] Plaintiffs have named "CMS von Erlach Henrici Stettler Wille LLP" as a defendant in this
   action; no such entity exists.

24 [2] The foreign Defendants all plan to move to dismiss this action for lack of personal jurisdiction at
   the appropriate time and fully reserve their position on this issue in filing this notice of removal.
25 Further, the laws of Switzerland do not recognize the jurisdiction of this court over the Swiss
   residents or individuals or entities domiciled in Switzerland: BSI, F. Di Pietro, B. Amman,
26 Generali, CMS, Damiano Brusa, BHVG, and Nicola Barandun (the "Swiss Defendants"). As a
   result, the Swiss Defendants will, under Swiss law, have the right to object to the enforcement of
27 any judgment rendered by this court in Switzerland and other foreign courts. The Swiss
   Defendants do not waive, and hereby preserve, all rights to contest the enforceability of any
28 judgment entered against them in these proceedings.

12295964.4                          - 2 -

1   funds in a Swiss Bank, BSI's predecessor, before he passed away. The money in
2   those accounts has been dispersed to Mr. Wallers' widow pursuant to Mr. Wallers'
3   will, Swiss law and procedures, and court judgments rendered in Switzerland by
4   Swiss courts. Apparently unhappy with the results in Swiss courts, Plaintiff now
5   seeks to drag the Swiss Bank, BSI, and two of its Swiss employees (along with,
6   among others, an Italian company, three foreign law firms, and three attorneys from
7   those foreign firms) into court in California in an improper attempt to obtain a
8   different outcome.

9                        <u>Diversity of Citizenship Jurisdiction</u>

10          3.    Removal to this Court is proper because this Court has original
11   jurisdiction over this suit under 28 U.S.C. § 1332(a). A case is removable under
12   this section if: (1) the action involves an amount in controversy in excess of
13   $75,000; (2) there is complete diversity of citizenship between the parties; and (3)
14   no defendant is a citizen of the forum state. 28 U.S.C. §§ 1332, 1441. As set forth
15   below, each of these conditions is satisfied.

16          4.    The amount in controversy in this action exceeds $75,000.
17   Plaintiff seeks at least $6,000,000 in damages. Complaint, ¶ 78.

18          5.    The requirement that there be complete diversity of citizenship
19   between the parties is satisfied:

20                (a)    As noted above, Plaintiff Keledjian brings this suit in two
21   capacities— in his role as the trustee of the Trusts and in his role as the purported
22   administrator of Mr. Wallers' estate. As the trustee of the Trusts, Mr. Keledjian's
23   citizenship is the relevant factor for determining diversity jurisdiction. *See Johnson*
24   *v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("A trust
25   has the citizenship of its trustee or trustees."). Upon information and belief,
26   Plaintiff is, and at all relevant times was, a citizen and resident of California.

27

28

Declaration of Richard Chen ("Chen Decl.") ¶ 3; *see also* Complaint,[3] ¶ 19. Accordingly, the Plaintiff trustee is a citizen of California.

(b)     For Plaintiff Keledjian's role as the administrator of Mr. Wallers' purported will, it is Mr. Wallers' citizenship while he was alive that is relevant for determining this Court's diversity jurisdiction. 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."). According to the will attached to the Complaint, Mr. Wallers was a citizen of the United Kingdom. Complaint, Exh. A at 1. The Complaint also alleges, however, that Mr. Wallers resided for some portion of his life in California. *See id.* ¶ 20. Diversity jurisdiction exists whether Mr. Wallers is considered a citizen of California, the United Kingdom, or both. So long as all plaintiffs that are United States citizens are citizens of different states than all defendants that are United States citizens, diversity jurisdiction is proper. *See* 28 U.S.C. § 1332(a)(3) (permitting diversity jurisdiction where the suit is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties"); *accord Tango Music, LLC v. DeadQuick Music, Inc.,* 348 F.3d 244, 245-46 (7th Cir. 2003). Further, it makes no difference to the diversity analysis whether a plaintiff and one or more of the defendants in an action are citizens of the same foreign country; diversity of state citizenship is what is required. *Id.* Here, the Plaintiff trustee is a citizen of California and the Plaintiff alleged estate administrator may be a resident of California. As discussed below, no defendant is a citizen of California.

(c)     Defendant BSI is a citizen of Switzerland. A corporation is a citizen of the place in which it is incorporated and of the location of its principal place of business. 28 U.S.C. §1332(c)(1); *see also Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987, 990 (9th Cir. 1994) (applying

---

[3] The Complaint is attached hereto as Exhibit 1 along with all of the pleadings from the state court proceedings.

1    this rule to a corporation incorporated in a foreign country).  Defendant BSI is

2    incorporated and has at all relevant times had its principal place of business in

3    Switzerland.  Declaration of Damiano Brusa ("Brusa Decl.") ¶ 3.

4           (d)    Defendant Generali is a citizen of Italy because it is

5    incorporated and has at all relevant times had its principal place of business in Italy.

6    *Id.* ¶ 5.

7           (e)    Defendant Agora is a citizen of the state of Maryland

8    because it is incorporated and has at all relevant times had its principal place of

9    business in Maryland.  Chen Decl. ¶ 7.

10          (f)    Defendant BHVG is a citizen of Switzerland.  Diversity

11   jurisdiction in a suit against an entity such as a partnership or a limited liability

12   company depends on the citizenship of all of its members.  *Carden v. Arkoma*

13   *Associates*, 494 U.S. 185, 195-96 (1990) (as to partnerships); *see also Johnson*, 437

14   F.3d at 599 (applying *Carden* to limited liability companies).  All partners of

15   Defendant BHVG are, and at all relevant times were, citizens of Switzerland or

16   otherwise not citizens of California.  Declaration of Nicola Barandun ("Barandun

17   Decl.") ¶ 2.

18          (g)    Defendant CMS is a citizen of Switzerland.  All partners

19   of Defendant CMS are, and at all relevant times were, citizens of Switzerland or

20   otherwise not citizens of California.  Brusa Decl. ¶ 2.

21          (h)    Defendant Taylor Wessing LLP is a citizen of various

22   foreign countries.  On information and belief, all partners of Defendant Taylor

23   Wessing LLP are, and at all relevant times were, citizens of the United Kingdom,

24   Germany, France, Belgium, Dubai, Poland, China, or otherwise not citizens of

25   California.  Chen Decl. ¶ 6.

26          (i)    Defendant Nicola Barandun is, and at all relevant times

27   was, a citizen of Switzerland.  Barandun Decl. ¶ 2.

28

12295964.4

- 5 -

(j)     Defendant Damiano Brusa is, and at all relevant times was, a citizen of Switzerland. Brusa Decl. ¶ 2.

(k)     Defendant F. Di Pietro is, and at all relevant times was, a citizen of Switzerland and Italy. *Id.* ¶ 4.

(l)     Defendant B. Ammann is, and at all relevant times was, a citizen of Switzerland. *Id.* ¶ 4.

(m)     Defendant Andrew Goodman is, and at all relevant times was, a citizen of the United Kingdom. Chen Decl. ¶ 5.

6.     The citizenship of any Doe defendants is irrelevant for purposes of removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."). Accordingly, because the Plaintiff trustee is a citizen of California and the Defendants are citizens of other states or countries, the complete diversity requirement is met.

7.     For the third and final prong, as set forth above, no defendant is a citizen of the forum state and, thus, all three requirements for diversity jurisdiction are satisfied. *See* 28 U.S.C. § 1441(b).

<u>Satisfaction of Procedural Requirements</u>

8.     This Notice of Removal is timely filed. Under 28 U.S.C. § 1446(b), the "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." The 30-day period runs from formal service on Defendants. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that the 30-day period for removal under 28 U.S.C. § 1446(b) does not begin to run until formal service is effectuated). The earliest date on which any of the Defendants was properly served with the Summons and Complaint in the state action was October 19, 2010. Chen Decl. ¶ 2, Exh. A. This Notice of Removal is filed within 30 days of October 19, 2010.

9.     Removal to this Court is proper under 28 U.S.C. § 1441 because this district and division "embrac[e] the place where such action is pending." *Id.* § 1441(a).

10.     All named Defendants consent to this Removal. *See* Chen Decl. ¶ 8; *see also Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("[o]ne defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient" to implement the unanimous joinder rule).

11.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Superior Court of the State of California, County of Los Angeles, and is being served on all parties.

12.     In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the Defendants in the action are attached hereto as Exhibit 1.[4]

BASED ON THE FOREGOING, Defendants remove this action, now pending in the Superior Court of the State of California for the County of Los Angeles, Case Number BC445694, to the United States District Court for the Central District of California.

---

[4] As of this date, the state court docket shows an entry dated November 17, 2010, for a "Notice -- Case Management Conference." This document was not available online or retrievable in hard copy format in time for this filing. It is also the undersigned counsel's understanding that Agora has filed an answer, which is not reflected on the docket. This Notice of Removal will be supplemented with the additional documents as soon as they are available.

12295964.4

1    DATED: November 18, 2010

2                                         Munger, Tolles & Olson LLP
                                          BRAD D. BRIAN
                                          TAMERLIN J. GODLEY
3                                         RICHARD C. CHEN

4

5                                     By: ~~~~~~~~~~~~~~~
                                          BRAD D. BRIAN
6
                                          Attorneys for Defendants
7                                         BSI SA, F. DI PIETRO, B. AMMANN,
                                          ASSICURAZIONI GENERALI,
8                                         DAMIANO BRUSA, CMS VON
                                          ERLACH HENRICI AG
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12295964.4

- 8 -

# EXHIBIT 1

## Case Summary

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Case Number:** BC445694
HAIG KELEDJIAN VS. BSI SA, ET AL

**Filing Date:** 09/16/2010
**Case Type:** Fraud (no contract) (General Jurisdiction)
**Status:** Pending

### Future Hearings

**03/15/2011** at 09:00 am in department 61 at 111 North Hill Street, Los Angeles, CA 90012
Conference-Case Management

---

Documents Filed | Proceeding Information

### Parties

AGORA INC. - Defendant/Respondent

AMMANN B. - Defendant/Respondent

ASSICURAZIONI GENERALI - Defendant/Respondent

BARANDUN HESS VON GRAFENRIED - Defendant/Respondent

BARANDUN NICOLA - Defendant/Respondent

BRUSA DAMIANO - Defendant/Respondent

BSI SA - Defendant/Respondent

CMS VON ERLACH KLAINGUTI STETTLER WILLE - Defendant/Respondent

DOES 1 THROUGH 100 - Defendant/Respondent

EBERT JAMES R. ESQ. - Attorney for Plaintiff/Petitioner

GOODMAN ANDREW - Defendant/Respondent

KELEDJIAN HAIG - Plaintiff/Petitioner

KELEDJIAN HAIG ESQ. - Attorney for Plaintiff/Petitioner

PIETRO F. DI - Defendant/Respondent

TAYLOR WESSING LLP - Defendant/Respondent

---

Case Information | Party Information | Proceeding Information

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Documents Filed** (Filing dates listed in descending order)

**11/17/2010** Notice-Case Management Conference
Filed by Clerk

**09/16/2010** Complaint

---

Case Information | Party Information | Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)
None

---

Case Information | Party Information | Documents Filed | Proceeding Information

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BSI SA, a Swiss Banking corporation;

Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
HAIG KELEDJIAN, AS ADMINISTRATOR WITH WILL ANNEXED
OF THE ESTATE OF HENRY WALLERS, DECEASED;

Additional Parties Attachment form is attached.

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

SEP 16 2010

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Shaunya Wesley

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
Central Judicial District
111 North Hill St., Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):* **BC445694**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James R. Ebert (Bar # 105634)
KITAGAWA & EBERT, P.C., 8001 Irvine Center Drive, Suite 960, Irvine, CA 92618

Fax No.: (949) 788-0918
Phone No.: (949) 788-9980

DATE:
*(Fecha)* SEP 16 2010
JOHN A. CLARKE, CLERK

Clerk, by _____, Deputy
*(Secretario)* *(Adjunto)*
Shaunya Wesley

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
*LexisNexis® Automated California Judicial Council Forms*

| SHORT TITLE:                           |                | SUM-200(A) |
|----------------------------------------|----------------|------------|
| HAIG KELEDJIAN et al. vs. BSI SA et al. | CASE NUMBER:   |            |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

F. Di PIETRO, an individual; B. AMMANN, an individual; ASSICURAZIONI GENERALI, a multinational organization; AGORA, INC., a Delaware corporation; NICOLA BARANDUN, an individual; BARANDUN HESS VON GRAFENRIED, a Swiss limited liability partnership ; DAMIANO BRUSA, an individual; CMS VON ERLACH KLAINGUTI STETTLER WILLE, a Swiss limited liability partnership; ANDREW GOODMAN, an individual; TAYLOR WESSING LLP, an English limited liability partnership and DOES 1 through 100, inclusive

Page  2  of  3

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

*LexisNexis® Automated California Judicial Council Forms*

| SHORT TITLE: | | SUM-200(A) |
|---|---|---|
| HAIG KELEDJIAN et al. vs. BSI SA et al. | CASE NUMBER: | |

## INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[X] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

HAIG KELEDJIAN, AS SUCCESSOR TRUSTEE OF COVENTRY TRUST ENTERPRISE; HAIG KELEDJIAN, AS SUCCESSOR TRUSTEE OF COVENTRY INTERNATIONAL

Page ___3___ of ___3___
Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

LexisNexis® Automated California Judicial Council Forms

1  James R. Ebert, Esq., Bar #105634
   KITAGAWA & EBERT, P.C.
2  8001 Irvine Center Drive, Suite 960
   Irvine, CA 92618
3  (949) 788-9980
   (949) 788-0918 FAX
4

5  Haig Keledjian, Esq., Bar # 164019
   2290 Huntington Drive, Suite 100
6  San Marino, CA 91108
   (323) 682-2171
7  (626) 334-5329 FAX

8

9  Attorneys for Administrator with Will
   Annexed of Henry Wallers;
10 Trustee, Coventry Trust Enterprise;
   Trustee, Coventry International,
-11 Plaintiff

12

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14          COUNTY OF LOS ANGELES, CENTRAL JUDICIAL DISTRICT

15

16 HAIG KELEDJIAN, AS                    )  CASE NO BC 4 4 5 6 9 4
   ADMINISTRATOR WITH WILL              )
17 ANNEXED OF THE ESTATE OF HENRY       )
   WALLERS, DECEASED; HAIG              )
18 KELEDJIAN, AS SUCCESSOR TRUSTEE      )  COMPLAINT FOR CONSPIRACY
   OF COVENTRY TRUST ENTERPRISE;        )  TO COMMIT CONVERSION;
19 HAIG KELEDJIAN, AS SUCCESSOR         )  CONSPIRACY TO COMMIT FRAUD;
   TRUSTEE OF COVENTRY                  )  FRAUD; NEGLIGENT
20 INTERNATIONAL                        )  MISREPRESENTATION; BREACH
                                        )  OF FIDUCIARY DUTY; MONEY HAD
21          Plaintiffs,                 )  AND RECEIVED; PUNITIVE DAMAGES
                                        )  DEMAND: JURY TRIAL
22     vs.                              )
                                        )
23 BSI SA, a Swiss Banking corporation; )
   F. Di PIETRO, an individual;         )
24 B. AMMANN, an individual;            )
   ASSICURAZIONI GENERALI,              )
25 a multinational organization;        )
   AGORA, INC., a Delaware corporation; )
26 NICOLA BARANDUN, an individual;      )
   BARANDUN HESS VON GRAFENRIED,        )
27 a Swiss limited liability partnership; )
   DAMIANO BRUSA, an individual;        )
28 CMS VON ERLACH KLAINGUTI             )

                            1
                        COMPLAINT

STETTLER WILLE, a Swiss limited )
liability partnership; )
ANDREW GOODMAN, an individual; )
TAYLOR WESSING LLP, an English )
limited liability partnership and DOES 1 )
through 100, inclusive )
                                        )
                                        )
            Defendants.                 )
_____)

Plaintiff Haig Keledjian, as the Administrator with Will Annexed of Henry Wallers; Successor Trustee Coventry International; and Successor Trustee of Coventry Trust Enterprise alleges as follows:

1)      On March 19, 2009, Plaintiff Haig Keledjian was issued Letters of Administration with Will Annexed by the Superior Court of the County of Los Angeles, a copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference, and is the personal representative of Henry Wallers, who died on February 22, 1993.

2)      (a) On November 11, 1981, Henry Wallers established a trust known as Coventry International, Ltd. ("the 1981 Trust") which was to terminate on November 11, 2001. The beneficiaries of the 1981 Trust were: Henry Wallers, as to an undivided fifty percent (50%) interest and Coventry Trust Enterprise as to an undivided fifty percent (50%) interest. Henry Wallers was named as the Trustee of the 1981 Trust and William A. Malis was named its Trust Protector and given the power to name a successor trustee. A true and correct copy of the Trust Instrument for the 1981 Trust (executed by Henry Wallers in Los Angeles County, State of California) is attached hereto as Exhibit "B" and incorporated herein by reference.

(b) On July 11, 1992, defendant BSI SA created a putative trust known as Coventry International ("the 1992 Trust") which defendant BSI SA asserts terminates on July 11, 2012. The beneficiaries of the 1992 Trust are identical to the 1981 Trust, namely: Henry Wallers, as to an undivided fifty percent (50%) interest and Coventry Trust Enterprise as to an undivided fifty percent (50%) interest. Henry Wallers was named as the Trustee of the 1992 Trust. A true and correct copy of the Trust Instrument for the 1992 Trust is attached hereto as Exhibit "C" and incorporated herein by reference.

3)    Plaintiff Haig Keledjian is the duly appointed successor trustee of the 1981 Trust; the 1992 Trust; and, Coventry Trust Enterprise.

4)    Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that Defendant:

(a)  BSI SA ("BSI SA") is a multinational banking corporation headquartered in Switzerland.  Defendant BSI SA is the successor in interest to Banca Unione di Credito and Overland Bank.  Overland Bank solicited deposits and other securities from persons within the State of California including, but not limited to residents of Los Angeles County.

(b)  Defendant Assicurazioni Generali and its subsidiaries are engaged in interstate transactions involving residents of the State of California and is the parent of defendant BSI SA.

5)    Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendants F. Di Pietro and B. Ammann acted as the agent of defendant BSI SA in doing the acts complained of herein.

6)    Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendant Agora, Inc. ("Agora") is a Delaware corporation engaged in interstate transactions involving residents of the State of California.

7)    Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendant Taylor Wessing LLP, ("Taylor Wessing") is a English limited liability partnership and acted as the agent of defendant BSI SA in doing the acts complained of herein.

8)    Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendant Andrew Goodman acted as the agent of defendants Taylor Wessing and BSI SA in doing the acts complained of herein.

9)    Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendant Barandun Hess von Graffenried is a Swiss limited liability partnership and acted as the agent of defendant BSI SA in doing the acts complained of herein.

10)     Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendant Nicola Barandun acted as the agent of defendants Barandun Hess von Graffenried and BSI SA in doing the acts complained of herein.

11)     Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendant CMS von Erlach Klainguti Stettler Wille is a Swiss limited liability partnership and acted as the agent of defendant BSI SA in doing the acts complained of herein.

12)     Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendant Damiano Brusa acted as the agent of defendants CMS von Erlach Klainguti Stettler Wille and BSI SA in doing the acts complained of herein.

13)     Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendants Damiano Brusa and Nicola Barandun acted in league (financial partners) in doing the acts complained of herein.

14)     Plaintiff Haig Keledjian is unaware of the true names and capacities, whether individual, corporate, partnership, associate or otherwise of defendants DOES 1 through 100, inclusive, and has therefore sued them by the foregoing fictitious names.  Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that each of the defendants designed as a DOE is legally responsible and liable in some manner for the events and happenings referred to herein, and requests that when the true name and capacity of each such DOE is ascertained this Complaint be amended by the insertion of each such name and capacity.

15)     Plaintiff Haig Keledjian is informed and believes and thereon alleges that at all times herein mentioned, the defendants and each of them, were the agents, servants, and employees of their co defendants, and in doing the things hereinafter mentioned, were acting in the scope of their authority as such agents, servants and employees with the permission and consent of their co-defendants.

16)     Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that at all relevant times herein mentioned, each of the fictitiously named defendants sued herein as a DOE was the agent and/or employee of each of the remaining defendants and, in connection with the acts herein mentioned, was acting within the course and scope of such agency and/or

1  employment and that each defendant ratified each and every act, omission and thing done by

2  such fictitiously named defendants sued as a DOE herein.

3      17)  (a) Plaintiff Haig Keledjian is informed and believes, and on that basis alleges,

4  that each of the defendants conspired together and maliciously and willfully entered into a

5  scheme to engage in the wrongful acts described herein. Plaintiff Haig Keledjian is further

6  informed and believes and on that basis alleges, that in pursuit of that conspiracy and scheme,

7  each of the defendants did the acts and things alleged herein and all of such acts and things were

8  participated in and done by all of the defendants, or by one or more of them, as steps in the

9  conspiracy and for the purpose of causing the wrongful acts described herein.

10     (b) Plaintiff Haig Keledjian is informed and believes, and on that basis alleges,

11  that defendant BSI SA, a Swiss banking institution, unlawfully conducted and participated

12  directly and indirectly; in the conduct of an enterprise; through a pattern of unlawful (if not

13  racketeering) activity; spanning a period of years; during which BSI SA earned investment

14  income from the assets belonging to Plaintiff. Plaintiff Haig Keledjian is further informed and

15  believes and on that basis alleges, that in pursuit of the unlawful acts each of the defendants did

16  the acts and things alleged herein and all of such acts and things were participated in and done

17  by all of the defendants, or by one or more of them, as steps in the conspiracy and for the

18  purpose of causing the wrongful acts described herein.

19

20  ## JURISDICTIONAL ALLEGATIONS

21     18)  On multiple occasions, Overland Bank, through its agents Agora, Sovereign

22  Society, Adrian Hartmann and Hans C. Weber (Agora) solicited deposits from residents of

23  California by sending them promotional literature and invitations to attend seminars sponsored,

24  by Overland Bank in Vancouver, Canada, at which time Overland Bank promoted itself as a

25  Swiss Bank which desired to receive deposits from these individuals.

26     19)  Plaintiff Haig Keledjian received such an invitation from Agora. Plaintiff Haig

27  Keledjian was a resident of the State of California at the time that he received the invitation.

28

1   Said invitation was sent by mail and received by Plaintiff Haig Keledjian at his address in
2   California.

3       20)     Decedent Henry Wallers received such an invitation from Agora. Henry Wallers
4   was a resident of the State of California at the time that he received the invitation. Said
5   invitation was sent by mail and received by Henry Wallers at his address in California.

6       21)     William A. Malis received such an invitation from Agora. William A. Malis was
7   a resident of the State of California at the time that he received the invitation. Said invitation
8   was sent by mail and received by William A. Malis at his address in California. William A.
9   Malis continues to receive such solicitations from Agora to this day for seminars conducted in
10  Vancouver, Canada, the United States and elsewhere.

11      22)     The invitations received each extended an offer to attend a seminar in Vancouver,
12  Canada which was sponsored by Overland Bank. Henry Wallers and William A. Malis attended
13  the seminar described in the written invitations they received. While at the seminar, Overland
14  Bank solicited each of them to deposit money in Overland Bank in Switzerland. Overland Bank
15  represented to Henry Wallers, William Malis and other participants at the seminar that deposits
16  made with Overland Bank would be secure and earn favorable interest rates between ten and
17  twelve percent (10-12%) compounded per annum. Overland Bank also solicited William Malis
18  to recommend others to it for the purpose of depositing money in Switzerland.

19      23)     On or about March 30, 1992, based upon the solicitations made by Overland
20  Bank at the seminar (to which Henry Wallers had been invited), Henry Wallers, trustee of the
21  1981 Trust, placed on deposit and for investment, the sum of $1,432,000 with Overland Bank.
22  Said deposit is the subject of this Complaint. The residence of the trustee of the 1981 Trust,
23  Henry Wallers, and the place of administration of the trust is Los Angeles County, State of
24  California.

25
26
27
28

## FACTS COMMON TO EACH ALLEGATION

24) On or about March 30, 1992, Henry Wallers, who was at that time the trustee of the 1981 Trust, placed the sum of $1,432,000 on deposit with Overland Bank, predecessor in interest to defendant BSI SA. Said deposit constituted the primary asset of the 1981 Trust.

25) In accordance with Section 4.03 of the Trust Instrument, the 1981 trust was to terminate in twenty (20) years, or on November 11, 2001.

26) On or about July 11, 1992, Henry Wallers and William A. Malis met with representatives of the Overland Bank to discuss the 1981 Trust and its investment portfolio. During that meeting, Mr. Sacchetto, the account representative of Overland Bank, asked Henry Wallers for a copy of the trust indenture for the 1981 Trust. Henry Wallers did not then have a copy of the 1981 trust in his possession. However, William Malis did have a standard trust form in his brief case. The representative of Overland Bank, Mr. Sacchetto, then asked William Malis to fill in the basic terms of the 1981 trust onto the standard trust form for the purpose of the instant meeting. Mr. Sacchetto then asked Henry Wallers to sign the standard trust form then and there in his presence. Mr. Sacchetto then asked Henry Wallers to send a copy of the 1981 Trust to Overland Bank in Switzerland whereupon Henry Wallers directed William Malis to do so. William Malis complied with the request of Mr. Wallers in or about August 1992. Section 4.01 of both the 1992 Trust and the 1981 Trust provide that the trust(s) are irrevocable; and, in accordance with Schedule B of both the 1992 Trust and the 1981 Trust, the beneficiaries are identical. A true and correct copy of the filled in standard trust form in the hand of William Malis (the 1992 Trust) is attached hereto as Exhibit "C" and incorporated by this reference.

27) After the death of Henry Wallers, Overland Bank created the fiction that a new trust was formed in 1992. This fiction was thereafter used by Overland Bank to create the illusion that the termination date for the 1981 Trust should be lengthened from November 11, 2001 to July 11, 2012 and to deny the legal authority of the trust protector of the 1981 Trust to appoint a successor trustee.

28)     On or about April 22, 1981, Henry Wallers executed a Will naming the Henry Wallers' Trust dated April 22, 1981 as the residuary beneficiary of his estate (1981 Wallers' Will) Louise Wallers is the ultimate beneficiary as to an 87.5% interest therein.

29)     On or about October 21, 1991, Henry Wallers executed a Will (the 1991 Wallers' Will) revoking all prior wills, including the 1981 Wallers' Will. The 1991 Wallers' Will did not designate Louise Wallers as an executor nor did it provide for her as a beneficiary.

30)     (a) On or about <u>March 31, 2008</u>, at a time when Henry Wallers was deceased, defendants BSI SA, Nicola Brandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Andrew Goodman, Taylor Wessing and DOES 1 through 100, inclusive (<u>without legal or other notice to Plaintiff or upon any judicial order</u>) dishonestly created and corruptly, thereafter, gave full legal force and effect to the Deed of Appointment in <u>England</u> naming Louise Wallers sole Trustee of the 1992 Trust (ignoring the 1981 Trust wherein the Trust Protector was invested with the sole authority to name a successor trustee) by fraudulently agreeing, amongst them, that Henry Wallers died <u>intestate</u>. This calculating fallacious representation by defendants that Henry Wallers died <u>intestate</u> was to be the key predicate by which defendants would thereafter untruthfully opine and, dissolutely agree, that Louise Wallers, as the <u>supposed</u> sole intestate heir of the Estate of Henry Wallers, <em>eo ip-so</em>, had legal authority in <u>England</u> to name herself as trustee of the 1992 Trust. Upon creating the Deed of Appointment in England by falsely asserting Henry Wallers died <u>intestate</u>, Defendant BSI SA persisted in its illicit scheme by <u>altering</u> the 1992 Trust indenture by changing it from a <u>irrevocable</u> trust to a <u>revocable trust</u>. Concurrently, therewith, defendant BSI SA <u>permitted</u> Louise Wallers to declare she to be the sole beneficial owner of the, <u>now revocable</u>, 1992 Trust. The, <em>coup de grace</em>, was served upon Plaintiff when defendant BSI SA (ignoring the 1981 Trust) gave full force and legal effect to the <u>altered</u> 1992 Trust and to the knowingly <u>false declaration</u> of Louise Wallers by unlawfully (if not criminally) paying out the sum of $ 688,860, <u>free of trust</u>, to Louise Wallers (<u>well in advance of its stated term of 11 July 2012 as alleged by defendants</u>); whilst retaining the balance of the assets of the 1992 Trust and the 1981 Trust

1   ($ 5,962,140) for itself and, its co-conspirators. Remarkably, defendant BSI SA took the

2   singular precaution to enter into an indemnity agreement with Louise Wallers (age 92) in the

3   event defendant BSI SA is subsequently ordered by a court of law to restore the assets of the

4   1992 Trust; and, the 1981 Trust to Plaintiff.

5          (b)  Whilst knowing and falsely representing that Henry Wallers died

6   intestate in order to dishonestly create the Deed of Appointment in England naming Louise

7   Wallers trustee of the 1992 Trust (creating the impression the Deed was obtained under colour of

8   English law and ignoring the 1981 Trust wherein the Trust Protector was invested with the sole

9   legal authority to name a successor trustee), defendant BSI SA and its co-conspirators were,

10   concurrently and corruptly, representing in Switzerland to the Commercial Court Canton of

11   Zurich (a non-adversary, non-probate, non-noticed proceeding) that Henry Wallers died testate

12   and the revoked 1981 Wallers' Will governed the disposition of his estate in Switzerland. The

13   ostensible dual purpose for obtaining the Swiss court's approval of the dissolute settlement

14   agreement between BSI SA and Louise Wallers was to wrongfully bestow the assets of the

15   Estate of Henry Wallers directly, without the 1992 Trust, to Louise Wallers under colour of

16   Swiss law; and to otherwise provide cover for its conduct in dishonestly creating the Deed of

17   Appointment in England naming Louise Wallers trustee of the 1992 Trust. In its (apparently

18   successful) attempt to deceive the Zurich Commercial Court, defendant BSI SA and its co-

19   conspirators (and in complete derogation of traditional notions of justice and fair play as are

20   applicable to all civilized nations) did not find it necessary, appropriate or advisable to inform

21   the Court of the inconvenient truth:

22          1) the 1981 Wallers' Will was revoked by Henry Wallers in 1991; was therefor

23          of no further force or legal affect; and, could not possibly be any legal basis upon

24          which Louise Wallers would or should directly receive, without the 1992 Trust,

25          the assets of the Estate of Henry Wallers under Swiss law.

26          2) Henry Wallers executed a later will (the 1991 Wallers' Will) which did not

27          make provision for Louise Wallers as a beneficiary.

28

3) the Hague Convention, as applicable to the recognition of Trusts, singularly governed the legal disposition of the assets of the 1992 Trust; the 1981 Trust. (Switzerland became a signatory to the Hague 1 June 2007 and the acts complained of herein occurred in or about March 2008).

4) Louise Wallers was neither a beneficiary of the 1992 Trust; the 1981 Trust;

5) Louise Wallers previously assigned to the trustee of the 1981 Trust, all of her right, title and interest, if any, in and to all bank and other accounts being held by defendant BSI SA.

31)    At the time defendants created the March 2008 Deed of Appointment in England naming Louise Wallers as Trustee of the 1992 Trust (ignoring the 1981 Trust) Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Andrew Goodman, Taylor Wessing and DOES 1 through 100, knew and/or should have known Henry Wallers died testate and that Louise Wallers was not the sole beneficiary or personal representative of the Estate of Henry Wallers and thus did not have any legal or other authority in England to name herself putative trustee of the 1992 Trust.  The Deed of Appointment naming Louise Wallers trustee of the 1992 Trust was witnessed by defendant Nicola Barandun.  A true and correct copy of said Deed of Appointment of Trustee is attached hereto as Exhibit "D" and incorporated herein by reference.

32)    In furtherance of their scheme to deprive Plaintiff of the assets of the 1992 Trust; the 1981 Trust, defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Andrew Goodman and Taylor Wessing scrupulously avoided giving no legal or other notice to Plaintiff that defendants were attempting to dishonestly create a Deed of Appointment in England naming Louise Wallers as the sole trustee of the 1992 Trust.

33)    Commencing in or about March 2008 and in furtherance of their scheme to deprive Plaintiff of the trust funds of the 1992 Trust; the 1981 Trust, defendants BSI SA, F. Di Pietro, B. Ammann Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von

1 Erlach Klainguti Stettler Wille conspired to and did perpetrate, *inter alia*, the following wrongful

2 acts:

3    (a)  Knowingly and falsely representing in <u>England</u> that Henry Wallers died

4 <u>intestate</u> in order to dishonestly create the Deed of Appointment naming Louise Wallers trustee

5 of the 1992 Trust (creating the impression the Deed of Appointment was obtained under colour

6 of English law and ignoring the 1981 trust wherein the Trust Protector was invested with the

7 sole authority to name a successor trustee); whilst, concurrently and corruptly, representing in

8 Switzerland to the Commercial Court Canton of Zurich (a non-adversary, non-probate, non-

9 noticed proceeding) that Henry Wallers died <u>testate</u> and the revoked 1981 Wallers' Will

10 governed the disposition of his estate in <u>Switzerland</u>.

11    (b)  Knowingly and falsely representing in <u>England</u> that Henry Wallers died

12 <u>intestate</u> and that Louise Wallers was the personal representative of the Estate of Henry Wallers

13 in order to dishonestly create the Deed of Appointment naming Louise Wallers trustee of the

14 1992 Trust (ignoring the 1981 Trust wherein the Trust Protector was invested with the sole

15 authority to name a successor trustee).

16    (c)  Knowingly and falsely <u>altering</u> the 1992 Trust indenture by changing it from

17 a <u>irrevocable</u> trust to a <u>revocable trust</u>.

18    (d)  Knowingly and falsely <u>permitting</u> Louise Wallers to declare she to be the sole

19 beneficial owner of the, <u>now revocable</u>, 1992 Trust.

20    (e)  Knowingly and falsely <u>permitting</u> the 1992 Trust to be terminated well in

21 advance of its stated term of 11 July 2012 as asserted by defendant.

22    (f)  Denying the <u>full force and legal effect</u> of the assignment by Louise Wallers,

23 to the <u>trustee of the 1981 Trust</u>, all of her right, title and interest, if any, in and to all bank and

24 other accounts being held by defendant BSI SA.

25    (g)  Knowing and falsely converting a portion of the assets of the 1992 Trust; the

26 1981 Trust to Louise Wallers in the amount of $ 688,860, <u>free of trust</u>; promptly closing all BSI

27 SA accounts in the name of the 1992 Trust; the 1981 Trust; whilst remarkably taking the

28 singular precaution to enter into an indemnity agreement with Louise Wallers (age 92) in the

1  event defendant BSI SA is subsequently ordered by a court of competent jurisdiction to restore

2  the assets of the 1992 Trust; the 1981 Trust to Plaintiff herein.

3       (h)  Knowingly and falsely converting the assets of the 1992 Trust and the 1981

4  Trust to and amongst defendants herein and others, as follows:

| | |
|---|---|
| 5    Value of the 1992 Trust and/or the 1981 Trust | $6,381,000 |
| 6    Legal fees to defendant Nicola Barandun | 400,000 |
| 7      (improperly paid directly from the 1992 Trust and/or | |
| 8      the 1981 Trust by defendant BSI) | |
| 9    Legal fees to defendant Damiano Brusa/ CMS | |
| 10      (improperly paid directly from the 1992 Trust and/or | 247,000 |
| 11      the 1981 Trust by defendant BSI) | |
| 12    Disbursement to Louise Wallers, free of trust, | 688,860 |
| 13    Balance believed to be retained by defendant BSI | 5,045,140 |
| 14      Total | <u>$6,381,000</u> |

15       (i)  After giving notice to BSI SA, Assicurazioni Generali, F. Di Pietro, B.

16  Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach

17  Klainguti Stettler Wille evidence of its unlawful acts, each sought to cover up their connivance

18  by continuing to <u>frustrate, hinder and delay</u> restoring the assets of the 1992 Trust; the 1981

19  Trust; and, the assets of the Estate of Henry Wallers (under the 1991 Wallers' Will) to Plaintiff

20  with defendant BSI SA incredibly asserting "***we have to inform you that we have not been able***

21  ***to identify you as a client of our institution or a person entitled to receive information***" (eerily

22  reminiscent of the notorious manner by which Swiss banks have been known to customarily

23  deny claims made by survivors of the recent holocaust); and, with defendant Damiano Brusa

24  patently and falsely asserting the Deed of Appointment naming Louise Wallers trustee of the

25  1992 Trust was according "***to the ruling of an English court***". (No such ruling exists and the

26  record unambiguously shows the defendants deliberately engaged in conduct scrupulously

27  designed to avoid bringing the matter before any court of law).

28

12
COMPLAINT

33)     Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that Louise Wallers paid to defendant Nicola Barandun an additional sum of $ 100,000 for legal services rendered but, at the request of defendant Nicola Barandun, to be paid to his wife and marked "gift".

34)     Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendant Nicola Barandun requested Louise Wallers (age 92) to execute a will leaving her entire estate to a entity controlled and operated by his father-in-law in Switzerland.

## FIRST CAUSE OF ACTION

### (Conspiracy for Conversion against All Defendants)

35)     Plaintiff Haig Keledjian incorporates and realleges Paragraphs 1 through 34, inclusive, as though set forth in full herein.

36)     On or about March 30, 1992, Henry Wallers, who was at that time the trustee of the 1981 Trust, placed the sum of $1,432,000 on deposit with Overland Bank, predecessor in interest to defendant BSI SA. Said deposit constituted the primary asset of the 1981 Trust.

37)     (a) Plaintiff Haig Keledjian is informed and believes, and thereon alleges that on or about March 31, 2008, defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing, Andrew Goodman and Does 1 through 10, inclusive, and each of them, willfully, knowingly, oppressively and maliciously conspired and agreed amongst themselves to convert the assets of the of the 1992 Trust; the 1981 Trust; and the Estate of Henry Wallers under the 1991 Wallers' Will to and amongst themselves.

    (b) Plaintiff Haig Keledjian is informed and believes, and on that basis alleges, that defendant BSI SA, a Swiss Banking institution unlawfully conducted and participated directly and indirectly; in the conduct of an enterprise; through a pattern of wrongful (if not racketeering) activity; spanning a period of years; during which BSI SA earned investment income from the assets belonging to Plaintiff. Plaintiff Haig Keledjian is further informed and believes and on that basis alleges, that in pursuit of the unlawful acts, each of the defendants did

1  the acts and things alleged herein and all of such acts and things were participated in and done

2  by all of the defendants, or by one or more of them, as steps in the conspiracy and for the

3  purpose of causing the wrongful acts described herein.

4    38)    Plaintiff Haig Keledjian is informed and believes, and thereon alleges that on or

5  about March 31, 2008, through trick and device and pursuant to such conspiracy and agreement,

6  defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried,

7  Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing, Andrew Goodman

8  and Does 1 through 10 illicitly gave <u>full legal force and effect</u> to the Deed of Appointment it

9  created in England naming Louise Wallers Trustee of the 1992 Trust (ignoring the 1981 Trust);

10  and illicitly gave <u>full force and legal effect</u> to the <u>1981 Wallers' Will</u> which defendants knew or

11  should have known was <u>revoked</u> by Henry Wallers in 1991.  Defendants illicitly gave <u>full force

12  and legal effect</u> to the 1992 Trust and the 1981 Wallers' Will with full knowledge of the

13  following:

14      (a)  The original Trust indenture for the 1981 Trust invested the trust protector

15  with the sole authority to name a successor Trustee.

16      (b)  That Henry Wallers executed the 1991 Wallers' Will which did not make

17  provision for Louise Wallers as a beneficiary or personal representative of his estate and which

18  did not make provision for the appointment of Louise Wallers as the successor trustee of any

19  trust in which Henry Wallers was a participant.

20      (c)  That section 36(1) of the Trustee Act 1925 provides that the personal

21  representative of the estate of a deceased trustee (in the absence of any provision of the trust

22  indenture to the contrary notwithstanding) has <u>default</u> authority to name a successor trustee.

23    39)    Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess

24  von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing,

25  Andrew Goodman and Does 1 through 10, dishonestly created the March 2008 Deed of

26  Appointment in <u>England</u> naming Louise Wallers as Trustee of the 1992 Trust (ignoring the 1981

27  Trust and the 1991 Wallers' Will).  Defendants, however, chose to not give <u>legal or other notice

28  to any person including, but not limited to the personal representative of the Estate of Wallers

1  who, in accordance with section 36(1) of the Trustee Act 1925, did have <u>default</u> authority to

2  name a successor Trustee for the 1992 Trust (should one choose to ignore the 1981 Trust

3  wherein the Trust Protector was invested with the sole authority to name a successor trustee).

4       40)    Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess

5  von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing,

6  Andrew Goodman and Does 1 through 10 dishonestly created the Deed of Appointment in

7  <u>England</u> naming Louise Wallers (age 92) as trustee of the 1992 Trust for the purpose of illicitly

8  inducing Louise Wallers to transfer approximately ten percent (10%) of the assets of the  1992

9  Trust to herself and using her to convert the balance of  ninety percent (90%) of the assets of the

10  1992 Trust to defendant BSI SA and its co-conspirators.

11       41)    Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess

12  von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing,

13  Andrew Goodman and Does 1 through 10 knew there was <u>no legal or other authority</u> to name

14  Louise Wallers putative trustee the 1992 Trust in England and that Louise Wallers had <u>no legal</u>

15  <u>or other authority </u>to pay over any portion of the 1992 Trust; the 1981 Trust to anyone, much less

16  to defendant BSI SA.

17       42)    Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess

18  von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille and Does 1 through

19  10 knew or should have known the 1981 Wallers' Will was revoked by the 1991 Wallers' Will

20  which did not provide for Louise Wallers as a beneficiary.  Notwithstanding said knowledge,

21  defendants fraudulently represented to the Commercial Court Canton of Zurich (a

22  non-adversary, non-probate, non-noticed proceeding), that Louise Wallers was the sole

23  beneficiary of the Estate of Henry Wallers.  The ostensible dual purpose for obtaining the Swiss

24  court's approval of the dissolute settlement agreement between BSI SA and Louise Wallers was

25  to wrongfully bestow the assets of the Estate of Henry Wallers directly, <u>without the 1992 Trust,</u>

26  to Louise Wallers under colour of <u>Swiss law;</u> and, to otherwise provide cover for its conduct in

27  dishonestly creating the Deed of Appointment in England naming Louise Wallers trustee of the

28  1992 Trust (ignoring the 1981 Trust and the 1991 Wallers' Will).

43)     As a proximate result of the acts of defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing, Andrew Goodman and Does 1 through 10, as herein alleged, Plaintiff Haig Keledjian in his capacities as the Personal Representative of the Estate of Henry Wallers; trustee of the 1992 Trust; the 1981 Trust; Coventry Trust Enterprise, has been deprived of the legal and beneficial interest in the corpus of the 1992 Trust; the 1981 Trust; and the Estate of Henry Wallers (under the 1991 Wallers' Will) which value is in excess of Six Million Dollars ($6,000,000).

44)     The acts of Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing, Andrew Goodman and Does 1 through 10, as described above were willful, wanton, malicious and oppressive and were taken with the intent to deprive Plaintiff of its legal and beneficial interest in the 1992 Trust; the 1981 Trust; and the Estate of Henry Wallers ( under the 1991 Wallers' Will) thus justifying the awarding of exemplary damages by this Court to Plaintiff.

## SECOND CAUSE OF ACTION

### (Conspiracy to Commit Fraud against All Defendants)

45)     Plaintiff Haig Keledjian incorporates and realleges Paragraphs 1 through 44, inclusive, as though set forth in full herein.

46)     Plaintiff Haig Keledjian is informed and believes and thereon alleges that on or about March 31, 2008, defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing, Andrew Goodman and Does 1 through 10, inclusive, and each of them, willfully, knowingly, oppressively and maliciously conspired and agreed amongst them to defraud Plaintiff by; falsely representing in England there was legal authority to name Louise Wallers trustee of the 1992 Trust; untruly asserting Henry Wallers died intestate; ignoring the 1981 Trust wherein the Trust Protector was invested with the sole authority to name a successor

1   trustee; ignoring the 1991 Wallers' Will; making false representations to the Swiss Commercial

2   Court; ignoring the assignment of BSI accounts to the Trustees of the 1981 Trust; and, thereafter,

3   converting the assets of the 1992 Trust; the 1981 Trust to and amongst themselves.

4       47)    On or about March 31, 2008, BSI SA, F. Di Pietro, B. Ammann, Nicola

5   Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler

6   Wille, Taylor Wessing, Andrew Goodman dishonestly created the Deed of Appointment, in

7   England, naming Louise Wallers ( age 92) trustee of the 1992 Trust. Immediately thereafter,

8   defendants Nicola Barandun and Damiano Brusa delivered the illicit Deed to defendant BSI SA

9   (which it willingly accepted) along with instructions to pay over approximately ten percent

10   (10%) of the assets of the 1992 Trust; the 1981 Trust to Louise Wallers and using her to convert

11   the balance of ninety- percent (90%) of the assets of the 1992 Trust; the 1981 Trust to defendant

12   BSI SA and its co-conspirators.

13       48)    Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess

14   von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing,

15   Andrew Goodman knew there was no legal or other authority to name Louise Wallers Trustee of

16   the 1992 Trust. Moreover, defendants deliberately chose to ignore the terms of original 1981

17   Trust which contained a provision investing the Trust Protector with the sole legal authority to

18   name a successor trustee. The1992 Trust is governed by English law. Section 36(1) of the

19   Trustee Act 1925 provides that the personal representative of the estate of a decedent ( in the

20   absence of any provision in the trust indenture to the contrary notwithstanding) has sole default

21   authority to appoint a successor trustee of a trust in which the decedent was a trustee.

22   Defendants knew or should have known that Henry Wallers executed the 1991 Wallers' Will

23   which did not make provision for Louise Wallers as a beneficiary or the personal representative

24   of his estate and which did not provide for the appointment of Louise Wallers as the successor

25   trustee of any trust in which Henry Wallers was a participant. At the time defendants

26   dishonestly created the Deed of Appointment in England naming Louise Wallers Trustee of the

27   1992 Trust, each knew or should have known Henry Wallers died testate and of the existence of

28

1  the 1991 Wallers' Will and the fact that no personal representative had been appointed under that

2  Will.

3      49)    Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess

4  von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing,

5  Andrew Goodman and Does 1-10 undertook the conduct alleged herein in order to deceive and

6  defraud Plaintiff such that plaintiff would not receive the corpus of the 1992 Trust; the 1981

7  Trust; and, the Estate of Henry Wallers (under the 1991 Wallers' Will) all the while knowing

8  Henry Wallers died testate and there was no legal or other authority in England to name Louise

9  Wallers trustee of the 1992 Trust.

10     50)    At the time that defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun,

11  Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille,

12  Taylor Wessing, Andrew Goodman were engaging in their illicit conduct, Plaintiff Haig

13  Keledjian was unawares because defendants scrupulously avoided giving legal or other notice to

14  anyone including, but not limited to Plaintiff.  Had Plaintiff Haig Keledjian known that

15  defendants were attempting to dishonestly create a Deed of Appointment in England naming

16  Louise Wallers trustee of the 1992 Trust, Plaintiff would have opposed the deed.

17     51)    Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess

18  von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille and Does 1 through

19  10 knew the 1981 Wallers' Will was revoked by the 1991 Wallers' Will which did not make

20  provision for Louise Wallers as a beneficiary.  Notwithstanding said knowledge, defendants

21  fraudulently represented to the Commercial Court Canton of Zurich (a non-adversary,

22  non-probate, non-noticed proceeding) that Louise Wallers was the sole beneficiary of the Estate

23  of Henry Wallers.  The ostensible dual purpose for obtaining the Swiss court's approval of the

24  dissolute settlement agreement between BSI SA and Louise Wallers was to wrongfully bestow

25  the assets of the Estate of Henry Wallers directly, without the 1992 Trust, to Louise Wallers

26  under colour of Swiss law; and, to otherwise provide cover for its conduct in dishonestly

27  creating the Deed of Appointment in England naming Louise Wallers trustee of the 1992 Trust

28

(ignoring the 1981 Trust wherein the Trust Protector was invested with the sole authority to name a successor trustee and acting in derogation of section 36(1) of the Trustee Act 1925).

52)    As a proximate result of the fraudulent conduct of defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing, Andrew Goodman as herein alleged, Plaintiff Haig Keledjian in his capacities as the Personal Representative of the Estate of Henry Wallers; trustee of the 1992 Trust; the 1981 Trust; and Coventry Trust Enterprise has been deprived of the legal and beneficial interest in the corpus of the 1992 Trust; the 1981 Trust; and the Estate of Henry Wallers (under the 1991 Wallers' Will) and have been damaged in a sum which will be proven at trial.

53)    The aforementioned conduct of defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille, Taylor Wessing, Andrew Goodman was an intentional misrepresentation, deceit, or concealment of material facts known to them with the intention on the part of defendants to deprive Plaintiff of the assets of the 1992 Trust; the 1981 Trust; Coventry Trust Enterprise; and, the Estate of Henry Wallers ( under the 1991 Wallers' Will) or otherwise causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages to Plaintiff by this Court.

## THIRD CAUSE OF ACTION

### (Fraud Against Defendant BSI SA)

54)    Plaintiff Haig Keledjian incorporates and realleges Paragraphs 1 through 53, inclusive, as though set forth in full herein.

55)    On or about March 31, 2008, defendant BSI SA dishonestly created a Deed of Appointment in England naming Louise Wallers as sole Trustee of the 1992 Trust by fraudulently representing Henry Wallers died <u>intestate</u>. Concurrently, therewith, defendant BSI SA was corruptly representing to the Commercial Court Canton of Zurich that Louise

1    Wallers was the sole testate beneficiary of the Estate of Henry Wallers (deceitfully ignoring the

2    1991 Wallers' Will). The ostensible dual purpose for obtaining the Swiss court's approval of the

3    dissolute settlement agreement between BSI SA and Louise Wallers was to wrongfully bestow

4    the assets of the Estate of Henry Wallers directly, without the 1992 trust, to Louise Wallers

5    under colour of Swiss law; and to otherwise provide cover for its conduct in dishonestly

6    creating the Deed of Appointment in England naming Louise Wallers as trustee of the 1992

7    Trust. In furtherance of its illegal plot to convert the assets of the 1992 Trust; the 1981 trust

8    to itself and its co-conspirators, BSI SA knowingly provided the fertile ground by which the

9    1992 Trust could and would be altered by tolerating it to be changed from a irrevocable trust to

10   a revocable trust; tolerating the acceleration of its stated term of 11 July 2012, as heretofore

11   asserted by defendants; and, thereafter, knowingly permitting Louise Wallers to make the false

12   representation she was the sole beneficial owner of the, now revocable, now terminated, 1992

13   Trust. Defendant BSI SA perfected its conversion of the assets of the 1992 Trust; the 1981 Trust

14   when it illicitly paid over approximately ten percent (10%) of the assets of the 1992 Trust; the

15   1981 Trust, free of trust, to Louise Wallers (age 92) and converted the balance of ninety percent

16   (90%) to itself and its co-conspirators.

17        56)     Defendants knew there was no legal or other authority in England to name Louise

18   Wallers as the sole Trustee of the 1992 Trust. Moreover, defendants deliberately chose to ignore

19   the terms of original 1981 Trust which contained a provision investing the Trust Protector with

20   the sole legal authority to appoint a successor trustee. The 1992 Trust is governed by English

21   law. Section 36(1) of the Trustee Act 1925 provides that the personal representative of the estate

22   of a decedent (in the absence of any provision in the trust indenture to the contrary

23   notwithstanding) has sole default authority to appoint a successor trustee of a trust in which the

24   decedent was a trustee. Defendants knew or should have known that Henry Wallers executed the

25   1991 Wallers' Will which did not make provision for Louise Wallers as a beneficiary or the

26   personal representative of his estate and which did not provide for the appointment of Louise

27   Wallers as the successor trustee of any trust in which Henry Wallers was a participant. At the

28   time defendants dishonestly created the Deed of Appointment in England naming Louise

1    Wallers Trustee of the 1992 Trust, each knew or should have known of the existence of the 1991

2    Wallers' Will and the fact that no personal representative had been appointed under that will.

3    Notwithstanding said knowledge, defendant BSI SA dishonestly created the Deed of

4    Appointment in England naming Louise Wallers trustee of the 1992 Trust so that it might

5    convert approximately ninety percent (90%) of the assets of; the 1992 Trust; the 1981 Trust; and,

6    the Estate of Henry Wallers (under the 1991 Wallers' Will) to itself and its co-conspirators.

7        57)    Defendant BSI SA took the actions alleged herein, knowing there was no legal or

8    other authority in <u>England</u> to name Louise Wallers Trustee of the 1992 Trust. Defendants

9    undertook the conduct complained of herein with malice aforethought and with the singular

10   intent to deceive and defraud Plaintiff such he would not receive the legal and beneficial interest

11   in the corpus of the 1992 Trust; the 1981 Trust; and, or the Estate of Henry Wallers (under the

12   1991 Wallers' Will). Defendant undertook all of the said acts for the purpose of using Louise

13   Wallers (age 92) to pay over approximately ten percent (10%) of the assets of the 1992 Trust to

14   herself in exchange for converting the balance of ninety- percent (90%) of the assets of the 1992

15   Trust; the 1981 Trust to defendant BSI SA and its co-conspirators.

16       58)    At the time that defendant BSI SA undertook the illicit actions described herein,

17   Plaintiff was caught unawares because defendants deliberately chose not to give <u>legal or other</u>

18   <u>notice</u> to anyone including but not limited to Plaintiff. Because Plaintiff was unaware of

19   defendant's wrongful conduct, Plaintiff did not have the opportunity to oppose the deed naming

20   Louise Wallers Trustee of the 1992 Trust. Had Plaintiff known that defendants were attempting

21   to dishonestly create a Deed of Appointment in England naming Louise Wallers sole Trustee of

22   the 1992 Trust, Plaintiff would have opposed the deed.

23       59)    Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess

24   von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille and Does 1 through

25   10 knew or should have known the 1981 Wallers' Will was <u>revoked</u> by the 1991 Wallers' Will

26   which did not make provision for Louise Wallers as a beneficiary. Notwithstanding said

27   knowledge, defendants fraudulently represented to the Commercial Court Canton of Zurich (a

28   non-adversary, non-probate, non-noticed proceeding), that Louise Wallers was the sole

1  beneficiary of the Estate of Henry Wallers (deceitfully ignoring the 1991 Wallers' Will and the

2  assignment by Louise Wallers of her interest in all BSI accounts to the Trustee of the 1981

3  Trust). The ostensible dual purpose for obtaining the Swiss court's approval of the dissolute

4  settlement agreement between BSI SA and Louise Wallers was to wrongfully bestow the assets

5  of the Estate of Henry Wallers directly <u>without the 1992 Trust</u>, to Louise Wallers under colour of

6  <u>Swiss</u> law; and, to otherwise provide cover for its conduct in dishonestly creating the Deed of

7  Appointment in <u>England</u> naming Louise Wallers as purported trustee of the 1992 Trust.

8       60)    As a proximate result of the fraudulent conduct of defendant BSI SA as herein

9  alleged, Plaintiff Haig Keledjian in his capacities as the Personal Representative of the Estate of

10  Henry Wallers; trustee of the 1992 Trust; the 1981 Trust; and Coventry Trust Enterprise has

11  been deprived of his legal and beneficial interest in the corpus of the 1992 Trust; the 1981 Trust;

12  and the Estate of Henry Wallers (under the 1991 Wallers' Will) and has been damaged in a sum

13  which will be proven at trial.

14       61)    The aforementioned conduct of defendant BSI SA was an intentional

15  misrepresentation, deceit, or concealment of material facts, known to them, with the intention

16  on the part of defendant BSI SA to deprive Plaintiff of its legal and beneficial interest in the

17  1992 Trust; the 1981 Trust; Coventry Trust Enterprise; and, the Estate of Henry Wallers (under

18  the 1991 Wallers' Will) or otherwise causing injury and, was despicable conduct that subjected

19  Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify

20  an award of exemplary and punitive damages to Plaintiff by this Court.

21

22                 **FOURTH CAUSE OF ACTION**

23      **(Negligent Misrepresentation against Defendant BSI SA)**

24       62)    Plaintiff Haig Keledjian incorporates and realleges Paragraphs 1 through 61,

25  inclusive, as though set forth in full herein.

26       63)    On or about March 31, 2008, defendant BSI SA dishonestly created a Deed of

27  Appointment in <u>England</u> naming Louise Wallers sole Trustee of the 1992 Trust by falsely

28  asserting Henry Wallers died intestate in order to circumvent the honest application of section

36(1) of the Trustee Act 1925. Based upon said Deed of Appointment and other fraudulent conduct, defendant BSI SA wrongfully paid over approximately ten percent (10%) of the corpus of the 1992 Trust and the 1981 Trust to Louise Wallers (age 92) and converted the balance of ninety percent (90%) to itself and its co-conspirators.

64) Defendant BSI SA reasonably should have been aware there was no <u>legal or other authority</u> in <u>England</u> to name Louise Wallers sole Trustee of the 1992 Trust. Moreover, defendants deliberately chose to ignore the terms of original 1981 Trust which contained a provision investing the Trust Protector with the sole legal authority to appoint a successor trustee. The 1992 Trust is governed by English law. Section 36(1) of the Trustee Act 1925 provides that the personal representative of the estate of a decedent ( in the absence of any provision in the trust indenture to the contrary notwithstanding) has sole <u>default</u> authority to appoint a successor trustee of a trust in which the decedent was a trustee. Defendants knew or should have known that Henry Wallers executed the 1991 Wallers' Will which did not make provision for Louise Wallers as a beneficiary or the personal representative of his estate and which did not provide for the appointment of Louise Wallers as the successor trustee of any trust in which Henry Wallers was a participant. At the time defendants dishonestly created the Deed of Appointment in England naming Louise Wallers Trustee of the 1992 Trust, each knew or should have known of the existence of the 1991 Wallers' Will and the fact that no personal representative had been appointed under that will. Notwithstanding said knowledge, defendant BSI SA dishonestly created the Deed of Appointment in England naming Louise Wallers trustee of the 1992 Trust (without notice to any other person in violation of corresponding provisions of the Code of Civil Procedure in England) so that it might convert approximately ninety percent (90%) of the assets of; the 1992 Trust; the 1981 Trust; and, the Estate of Henry Wallers (under the 1991 Wallers' Will) to itself and its co-conspirators.

65) Defendant BSI SA took the actions alleged herein with no reasonable belief there was any legal or other authority in <u>England</u> to name Louise Wallers trustee of the 1992 Trust. Defendant BSI SA took the actions alleged herein for the singular purpose of using Louise

1   Wallers to convert approximately ninety percent (90%) of the corpus of the 1992 Trust and the

2   1981 Trust to defendant BSI SA and its co-conspirators.

3        66)     At the time that defendants undertook the wrongful conduct described herein,

4   Plaintiff was caught unawares because defendants deliberately chose to give no legal or other

5   notice to Plaintiff. Since Plaintiff was unaware of defendant's illicit conduct, he did not oppose

6   the deed naming Louise Wallers Trustee of the 1992 Trust. Had Plaintiff known that defendant

7   BSI SA was attempting to dishonestly create a Deed of Appointment in England naming Louise

8   Wallers sole trustee of the 1992 Trust, he would have opposed the deed.

9        67)     Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess

10   von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille and Does 1 through

11   10 knew or should have known the 1981 Wallers' Will was revoked by the 1991 Wallers' Will

12   which did not make provision for Louise Wallers as a beneficiary. Notwithstanding said

13   knowledge, defendants fraudulently represented to the Commercial Court Canton of Zurich (a

14   non-adversary, non-probate, non-noticed proceeding), that Louise Wallers was the sole

15   beneficiary of the Estate of Henry Wallers (deceitfully ignoring the 1991 Wallers' Will). The

16   ostensible dual purpose for obtaining the Swiss court's approval of the dissolute settlement

17   agreement between BSI SA and Louise Wallers was to wrongfully bestow the assets of the

18   Estate of Henry Wallers directly without the 1992 Trust, to Louise Wallers under colour of

19   Swiss law; and, to otherwise provide cover for its conduct in dishonestly creating the Deed of

20   Appointment in England naming Louise Wallers trustee of the 1992 Trust (ignoring the 1981

21   Trust).

22        68)     As a proximate result of defendant BSI SA's negligent misrepresentation as

23   herein alleged, Plaintiff Haig Keledjian in his capacities as the Personal Representative of the

24   Estate of Henry Wallers; trustee of the 1992 Trust; the 1981 Trust; and Coventry Trust

25   Enterprise has been deprived of the legal and beneficial interest in the corpus of the 1992

26   Trust; the 1981 Trust; and the Estate of Henry Wallers (under the 1991 Wallers' Will) and has

27   been damaged in a sum which will be proven at trial.

28

24

COMPLAINT

## FIFTH CAUSE OF ACTION

### (Breach of Fiduciary Duty against Defendant BSI SA)

69)     Plaintiff Haig Keledjian incorporates and realleges Paragraphs 1 through 68, inclusive, as though set forth in full herein.

70)     On or about March 30, 1992, Henry Wallers, who was at that time the trustee of the 1981 Trust placed the sum of $1,432,000 on deposit with Overland Bank. Said deposit constituted the primary asset of the 1981 Trust.

71)     Defendant BSI SA owed a fiduciary duty to Plaintiff to act in good faith and to properly protect, manage and invest for profit the deposit made by Henry Wallers as trustee of the 1981 Trust.

72)     On or about March 31, 2008, defendant BSI SA breached its fiduciary duty to Plaintiff when it, *inter alia*, deceitfully and with purpose of evasion:

(a)  chose not to make any honourable attempt to determine the true legal and/or beneficial owner of the trust funds it held by, deliberately and curiously, taking an <u>adversarial and litigious</u> position for its <u>own account</u> instead of interpleading the assets of the 1992; the 1981 Trust as it would seem a legitimate and reputable banking institution would be prone to so do.

(b)  ignored the provisions of the Hague Convention as applicable to the recognition of Trusts (Switzerland became signatory to the Hague 1 June 2007 and the conduct complained of herein commenced in or about March 2008).

(c)  ignored the assignment by Louise Wallers of her interest, <u>if any</u>, to any and all accounts held by defendant BSI SA to the <u>trustee of the 1981 Trust</u>.

(d)  corruptly made fraudulent representations to the Commercial Court Canton of Zurich that Louise Wallers was the sole <u>testate</u> beneficiary of the Estate of Henry Wallers (ignoring the 1991 Wallers' Will); whilst, concurrently and corruptly, representing Henry Wallers died <u>intestate</u> for the purpose of creating the Deed of Appointment dishonestly naming Louise Wallers trustee of the 1992 Trust.

(e) illicitly created the Deed of Appointment in England naming Louise Wallers as trustee of the 1992 Trust (ignoring the 1981 Trust).

(f) altered the terms of the irrevocable 1992 Trust by changing it to a revocable trust and paying over the corpus of the trust (well in advance of its termination date of 11 July 2012) to Louise Wallers, free of trust, by permitting Louise Wallers to falsely declare she to be the sole beneficial owner of the now revocable, now terminated 1992 Trust.

(g) illicitly converting approximately ninety percent (90%) of the corpus of the 1992 Trust and the 1981 Trust to itself and its co-conspirators.

73) BSI SA knew and or should have known that Louise Wallers could not, *as a matter of law*, be named trustee of the 1992 Trust. The 1992 Trust and the 1981 Trust are governed by English law which provides that the personal representative of a decedent (in the absence of a provision in the trust indenture to the contrary notwithstanding) may name a successor trustee when the decedent was a trustee of a trust. Defendant BSI SA knew or should have known that Henry Wallers executed the 1991 Wallers' Will which revoked the 1981 Wallers' Will and which did not make provision for Louise Wallers as a beneficiary or the personal representative of his estate and which did not make provision for her appointment as a successor trustee to any trust in which Henry Wallers was a participant. As of March 31, 2008, defendant BSI SA also knew that no personal representative of the Estate of Henry Wallers had been appointed under the 1991 Wallers' Will and that the 1981 Trust invested the Trust Protector with the sole legal authority to name a successor trustee.

74) Defendants BSI SA, F. Di Pietro, B. Ammann, Nicola Barandun, Barandun Hess von Grafenried, Damiano Brusa, CMS von Erlach Klainguti Stettler Wille and Does 1 through 10 knew the 1981 Wallers' Will was revoked by the 1991 Wallers' Will which did not make provision for Louise Wallers as a beneficiary. Notwithstanding said knowledge, defendants deceitfully represented to the Commercial Court Canton of Zurich (a non-adversarial, non-probate, non-noticed proceeding), that Louise Wallers was the sole beneficiary of the Estate of Henry Wallers (deceitfully ignoring the 1991 Wallers' Will). The ostensible dual purpose for obtaining the Swiss court's approval of the dissolute settlement agreement between BSI SA and

Louise Wallers was to wrongfully bestow the assets of the Estate of Henry Wallers directly, without the 1992 Trust, to Louise Wallers under colour of Swiss law; and to otherwise provide cover for its conduct in fraudulently creating the Deed of Appointment in England naming Louise Wallers trustee of the 1992 Trust (ignoring the 1981 Trust).

75) As a proximate result of defendants breach of its fiduciary duty as herein alleged, Plaintiff Haig Keledjian in his capacities as the Personal Representative of the Estate of Henry Wallers; trustee of the 1992 Trust; the 1981 Trust; and Coventry Trust Enterprise has been deprived of the legal and beneficial interest in the corpus of the 1992 Trust; the 1981 Trust; and the Estate of Henry Wallers (under the 1991 Wallers' Will) and have been damaged in a sum which will be proven at trial.

## SIXTH CAUSE OF ACTION

### (Money Had and Received Against Defendant BSI SA)

76) Plaintiff Haig Keledjian incorporates and realleges Paragraphs 1 through 75, inclusive, as though set forth in full herein.

77) On or about On March 19, 2009, defendant BSI SA became indebted to Plaintiff Haig Keledjian in his capacities as the Personal Representative of the Estate of Henry Wallers; trustee of the 1992 Trust; the 1981 Trust; and Coventry Trust Enterprise in an amount to be proven at trial.

78) Despite demand therefore, no payment has been made by defendant BSI SA to Plaintiffs and there is now is owing by defendant BSI SA to Plaintiffs, a sum in excess of six-million dollars ($6,000,000) with interest on that amount at the maximum legal rate.

WHEREFORE, Plaintiff Haig Keledjian in his capacities as the Personal Representative of the Estate of Henry Wallers; trustee of the 1992 Trust; trustee of the 1981 Trust; and trustee of Coventry Trust Enterprise prays for judgment against Defendants, and each of them, as follows:

**First Cause of Action:**

    1)    For general damages in an amount to be proven at trial, plus interest at the maximum legal rate from and after March 31, 2008;

    2)    For punitive damages;

    3)    For costs of suit herein; and

    4)    For such other and further relief as the Court may deem just and proper.

**Second Cause of Action:**

    5)    For general damages in an amount to be proven at trial, plus interest at the maximum legal rate from and after March 31, 2008;

    6)    For punitive damages;

    7)    For costs of suit herein; and

    8)    For such other and further relief as the Court may deem just and proper.

**Third Cause of Action:**

    9)    For general damages in an amount to be proven at trial, plus interest at the maximum legal rate from and after March 31, 2008;

    10)    For punitive damages;

    11)    For costs of suit herein; and

    12)    For such other and further relief as the Court may deem just and proper.

**Fourth Cause of Action:**

    13)    For general damages in an amount to be proven at trial, plus interest at the maximum legal rate from and after March 31, 2008;

    14)    For costs of suit herein; and

    15)    For such other and further relief as the Court may deem just and proper.

**Fifth Cause of Action:**

    16)    For general damages in an amount to be proven at trial, plus interest at the maximum legal rate from and after March 31, 2008;

    17)    For costs of suit herein; and

    18)    For such other and further relief as the Court may deem just and proper.

Page 41

**Sixth Cause of Action:**

19) For general damages in an amount to be proven at trial, plus interest at the maximum legal rate from and after March 31, 2008;

20) For costs of suit herein; and

21) For such other and further relief as the Court may deem just and proper.

Dated: September 15, 2010

KITAGAWA & EBERT, P.C.

By: _____
James R. Ebert, Esq.
Attorneys for Haig Keledjian, as the
Administrator with Will Annexed of the
Estate of Henry Wallers and as Successor
Trustee of the 1981 Trust and/or the 1992
Trust and Coventry Trust Enterprise

---

29
COMPLAINT

# EXHIBIT "A"

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):

James R. Ebert   (State Bar # 105634)
KITAGAWA & EBERT, P.C.
8001 Irvine Center Drive, Suite 850
Irvine, CA 92618

TELEPHONE AND FAX NOS.:
(949) 727-0290
(949) 727-0607

**DE-150**

ATTORNEY FOR (Name): Haig Keledjian, Petitioner

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Central

FOR COURT USE ONLY

**FILED**
Los Angeles Superior Court

MAR 19 2009

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
R. AGUIRRE

ESTATE OF (Name):

Henry Wallers

DECEDENT

CASE NUMBER:
BP114178

### LETTERS

☐ TESTAMENTARY
☒ OF ADMINISTRATION WITH WILL ANNEXED
☐ OF ADMINISTRATION
☐ SPECIAL ADMINISTRATION

### LETTERS

1. ☒ The last will of the decedent named above having been proved, the court appoints (name):
   Haig Keledjian
   a. ☐ executor.
   b. ☒ administrator with will annexed.

2. ☐ The court appoints (name):

   a. ☐ administrator of the decedent's estate.
   b. ☐ special administrator of decedent's estate
      (1) ☐ with the special powers specified in the Order for Probate.
      (2) ☐ with the powers of a general administrator.
      (3) ☐ letters will expire on (date):

3. ☒ The personal representative is authorized to administer the estate under the Independent Administration of Estates Act ☐ with full authority
   ☒ with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.

### AFFIRMATION

1. ☐ PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. ☒ INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. ☐ INSTITUTIONAL FIDUCIARY (name):

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
   (Name and title):

4. Executed on (date): 3/5/09
   at (place): San Marino , California.

   ▶ _____
   (SIGNATURE)

### CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

WITNESS, clerk of the court, with seal of the court affixed.

Date: MAR 19 2009

Clerk, by JOHN A. CLARKE _____ (DEPUTY)

(SEAL)

Date: MAR 20 2009

Clerk, by John A. Clarke _____ (DEPUTY)
M. CORONA

ORIGINAL

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

### LETTERS
(Probate)

Probate Code §§ 1001, 8403,
8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

LexisNexis® Automated California Judicial Council Forms

## SAFEKEEPING WILL RECEIPT

Received in _Central_ District _11-6-08_ 10

Purported Will of _Henry Walters_

Date of Death _2-23-93_

Received from _JAMES R. GILBERT_

Address _KITAGAWA & GILBERT, P.C._

_8001 IRVINE CENTER DR #850, IRVINE, CA 92618_

Phone No. _949 727-0290_

2

**EXECUTIVE OFFICER/Clerk of the Superior
Court of California, County of Los Angeles**

By _Rgamber_ Deputy

CUSTOMER

PRO 019 (REV. 04/06) (REPL 76R198I)
E324





THEODORE
GODDARD

THIS IS MY LAST WILL AND TESTAMENT of me Henry Wallers of Parc Cotdier Immeuble Brighton 14360 TROUVILLE SUR MER FRANCE

1. I DECLARE that I am of British nationality

2. I REVOKE all former Wills and Testamentary dispositions made by me

3. I APPOINT the partners at the date of my death in the firm of THEODORE GODDARD or the firm which at that date has succeeded to and carries on its practice (hereinafter called my Trustees which expression shall where the context so permits include any Trustees for the time being of this my Will) of 70 boulevard de Courcelles 75838 PARIS FRANCE to be the Executors and Trustees of this Will and I express the wish that two and only two of them shall prove my Will I DECLARE that my Trustees shall be entitled to charge and be paid all usual professional or other charges for services rendered and time spent by them or their firm connected with the administration of my Estate or the Trusts of this Will including anything which a Trustee not engaged in any profession could have done personally

4. I DEVISE AND BEQUEATH all my Estate and effects whatsoever and wheresoever both real and personal unto my Trustees upon Trust to sell and call in the same with power to postpose such sale and calling in indefinitely and to retain any part of my Estate in its present form of investment without being reponsible for loss

5. MY TRUSTEES shall out of the money to arise from such sale and calling in and out of my ready money pay my funeral and testamentary expenses and debts and all Inheritance Tax

6. MY TRUSTEES shall invest the residue of the said monies (which with the investments for the time being representing the same are hereinafter called "The Trust Fund") in their names in or upon any investments hereinafter authorised

7. MY TRUSTEES shall stand possessed of the capital and income of the Trust Fund upon Trust absolutely for such of the following named beneficiaries in equal shares who shall survive me and reach the age of twenty one years:

   a) James Malis of 605 Plymouth Road San Marino CALIFORNIA USA

   b) Andrew Malis of 605 Plymouth Road San Marino CALIFORNIA USA

   c) Karine Malis of 605 Plymouth Road San Marino CALIFORNIA USA

.../2

-2-

8.  DURING the minority of any infant beneficiary hereunder my Trustees may in their absolute discretion at any time and from time to time, raise the whole or any part or parts of the capital of the presumptive share of any such infant beneficiary in the Trust Fund and apply the same for his or her maintenance education benefit or advancement in life and may also apply the whole or such part or parts as they shall think fit of the income derived from any share and may pay the same to his or her survivor parent or Guardian without being liable to see the application thereof.

9.  I DECLARE that as between capital and income no apportionment of rents dividends or other periodical payment shall take place for or in respect of the periods current at my death or at the falling into possession or any share in the capital of the Trust Fund

10. MONEY liable to be invested by my Trustees may in the absolute discretion of my Trustees be invested in the acquisition by purchase or otherwise or upon the security of such stocks funds securities lands buildings chattels assurances policies or other investments or property of whatever nature and in any part of the world and whether involving liability or not and whether producing income or not (including the purchase repair improvement or building of any property for the beneficial occupation or enjoyment of one or more of the beneficiaries hereunder) or upon such names of my Trustees or in the names of nominees or a nominee or in any other manner giving my Trustees control over the investment or property as my Trustees shall in their absolute discretion think fit to the extent that my Trustees shall be employed to invest and transpose the investments of trust monies in the same unrestricted manner as if they were the beneficial owners of such monies

11. Any Trustees may exercise the power of appropriation conferred by Section 41 of the Administration of Estates Act 1925 without obtaining any of the consents required by that Section and event though one or more of them may be beneficially interested


IN WITNESS whereof I have hereunto set my hand to this, My Will, this        day of            one thousand nine hundred and ninety one


Signed by the said Henry Wallers as and for his last Will and Testament in the presence of us both being present at the same time who at his request and in his presence and in the presence of each other have hereunto set our hands and subscribed our names as witnesses



# EXHIBIT "B"

COVENTRY INTERNATIONAL, LTD.
11 November 1981


HENRY WALLERS hereby declares to be the Trustee of all the property described in an inventory hereto attached, marked Schedule A, constituting, together with any other property that may become subject to this Agreement, the Trust Estate of an express trust and to be held, administered, and distributed by the Trustee as provided in this Agreement.

ARTICLE I

TRUST PROPERTY

Section 1.01.  Nature of Property:  The Transferor has transferred and delivered, or will transfer and deliver, to the Trustee, without consideration, the property described in Schedule A, attached hereto and incorporated herein.

Section 1.02.  Right to Make Additions to Trust:  The Transferor or any other person shall have the right at any time, either during life or by Will, to add other property acceptable to the Trustee to the trust created by this Agreement and such property, when received and accepted by the Trustee, shall become a part of the Trust Estate.

2

## ARTICLE II

### DISTRIBUTIONS BY TRUSTEE

Section 2.01. <u>Distribution of Income</u>: The annual net income of the Trust Estate, if any, may be distributed, in whole or part, or accumulated by the Trustee and added to the principal of the Trust Estate as the Trustee may determine, from time to time, in its sole and absolute discretion for the benefit of the beneficiaries of this trust mentioned in Schedule "B" attached hereto and incorporated herein.

Section 2.02. <u>Distribution of Principal</u>: The Principal of this trust may be distributed, in whole or part, in such amount to any beneficiary herein as the trustee may determine, from time to time, in its sole and absolute discretion. Upon the expiration of the term mentioned herein, this Trust shall terminate and all the Trust Estate then in the possession of the Trustee, shall go and be, by the Trustee, transferred, conveyed, and distributed in fee, free of trust, in such amount to any Beneficiary of this Trust as the trustee may determine from, time to time, in its sole and absolute discretion. In exercising the discretions conferred by this subparagraph, the Trustee may pay more to or apply more for some beneficiaries than others or more beneficiaries to the exclusion of others as the Trustee may determine in its, sole and absolute, discretion. Any payment or application of benefits pursuant to this subparagraph shall be charged against the Trust Estate as a whole.

Section 2.03. <u>Reserved.</u>

Section 2.04. <u>Reserved.</u>

3

Section 2.05. <u>Power of Appointment</u>: The Beneficiary may, at any time, appoint the principal and income of this trust, in whole or part, to any person by notifying the Trustee in writing or by specific reference to this Power of Appointment in the Beneficiary's last Will.

Section 2.06. <u>Takers in Default of Appointment</u>: Should the Beneficiary expire without effectively exercising in whole or in part, the power of appointment described in Section 2.05 of this Agreement, any unappointed portion of the principal of the Trust Estate then in the possession of the Trustee, any unappointed portion of the accumulated net income of the Trust Estate, and any unappointed portion of the undistributed net income of the Trust Estate, shall go and be, by the Trustee, transferred, conveyed, and distributed in fee to the estate of the Beneficiary.

4

ARTICLE III

POWERS OF TRUSTEE

Section 3.01.  Retain Investments of Transferor:  The Trustee is authorized to retain in the Trust for such time as it may deem advisable any property received by it from any Transferor or any other person, whether or not such property is of the character permitted by law for the investment of trust funds, and to operate at the risk of the Trust Estate any business or property received by it from the Transferor.

Section 3.02.  Reserved.

Section 3.03.  Management of Trust Property:  The Trustee shall with respect to any and all property which may at any time be held by it in trust pursuant to this Agreement, whether such property constitutes principal or accumulated income of the Trust Estate, have power, exercisable in the Trustee's discretion at any time and from time to time on such terms and in such manner as Trustee may deem advisable, to:

a.  Sell, convey, exchange, purchase, convert, improve, repair, manage, operate, and control any trust property.

b.  Lease for terms within or beyond the term of this trust and for any purpose, including exploration for and removal of gas, oil, and other minerals; and enter into any covenants and agreements relating to the property so leased or any improvements which may then or thereafter be erected on such property.

c.  Encumber or hypothecate for any trust purpose by mortgage, deed of trust, pledge, or otherwise.

d.  Carry insurance of such kinds and in such amounts at the expense of the trust as the Trustee may deem advisable.

e.  Commence or defend at the expense of the trust such litigation with respect to the trust or any property of the Trust Estate as it may deem advisable.

5

f.    Invest and reinvest the trust funds in such property as the Trustee may deem advisable, whether or not of the character permitted by law for the investment of trust funds, specifically including, but not by way of limitation, interests, if any, in any common trust fund or funds now or hereafter established and administered by the Trustee solely for the investment of trust funds, provided the Trustee is a person or entity other than the Transferor or his spouse.

g.    Vote and give proxies to vote any securities, including stock of the Trustee, if any, having voting rights that constitute part of the Trust Estate.

h.    Pay any assessments or other charges levied on any stock or other security held by it in trust pursuant to this Agreement.

i.    Exercise any subscription, conversion, or other rights or options which may at any time attach, belong, or be given to the holders of any stocks, bonds, securities, or other instruments forming part of the Trust Estate.

j.    Participate in any plans or proceedings for the foreclosure, reorganization, consolidation, merger, or liquidation of any corporation or organization that has issued securities that are part of the Trust Estate, and incident to such participation to deposit securities with and transfer title of securities to any protective or other committee established to further or defeat any such plan or proceeding.

k.    Enforce any mortgage or deed of trust or pledge held by it in trust pursuant to this Agreement and at any sale under any such mortgage, deed of trust, or pledge to bid and purchase for and at the expense of the trust any property subject to such security instrument.

l.    Compromise, submit to arbitration, release with or without consideration, and otherwise adjust any claims in favor of or against the trust.

m.    Subject to any limitations expressly set forth in this Agreement and the faithful performance of its fiduciary obligations, do all such acts, take all such proceedings, and exercise all such rights and privileges as could be done, taken, or exercised by an absolute owner of the trust property.

n.    Form and/or enter into, from time to time, one or more partnerships, limited or general.

6

o. Without regard to diversification, to invest principal funds and income if accumulated, in, and to retain for the account of the trust, such properties as men of prudence, discretion and intelligence purchase for their own account, having regard not to speculation but to the permanent disposition of their funds, and considering the probable income, as well as the probable safety of their capital; including, but not by way of limitation, real property or interests therein, corporate bonds and debentures, and stocks, preferred or common; also shares or interests in investment companies or trusts.

p. Lease trust property on such terms as the Trustee may deem proper and even for terms extending beyond the life of the trust created hereunder; and to construct buildings or improvements, or to join with any co-owner or tenant in the construction thereof.

q. Receive and accept, for the purposes of the trust created hereunder, additional money, securities or other property or interests therein from any donor. The Trustee shall incur no obligation or liability on account of such retention, regardless of the length thereof, the reason therefor, or the degree or lack of care exercised in making the decision to retain the same.

r. Invest, reinvest or retain all of the assets of the trust created hereunder, regardless of the fact that generally diversification is desirable, in a single security, loan, limited partnership, investment or business organization if the Trustee in his uncontrolled discretion, deems it to be advisable and proper; and to retain all or any part of the assets of the trust created hereunder in cash and on deposit in banks and uninvested, if the Trustee in its discretion deems it advisable.

s. Hold securities or other property in its own name or in the name of its nominee, without disclosing any fiduciary relation; to purchase, sell and trade in securities, options, and/or commodities or contracts in commodities of any nature on margin or otherwise, including short sales, and, for such purpose, shall have the power to maintain and operate security and commodity margin accounts with brokers and may pledge any security or other trust property as collateral for any such margin or commodity account. In furtherance of such powers, the Trustee may hold securities or other property in the Trustee name, as Trustee under this Declaration of Trust, or in the name of a nominee or in a street name or unregistered in such condition that ownership will pass.

7

t. Grant a power of attorney to such individuals and institutions upon such terms as it deems appropriate.

u. To engage in business with the property of the Trust as sole proprietor, or as general or limited partner, with all the powers customarily exercised by an individual so engaged in business, and to hold an undivided interest in any property as tenant in common or as tenant in partnership.

v. To make any division or distribution as required under the terms of this Agreement, in kind or in money, or partly in kind or partly in money, as the Trustee seems proper in its absolute discretion, and the Trustee's judgement as to the value of such shares, securities, or other property so allotted shall be conclusive on all parties. The Trustee shall not be required to make any provision on account of the diminution or increase in value of any securities or investment at any time constituting a part of the Trust herein created.

w. The Trustee may frequently act under any or all of the powers of this Agreement in all matters concerning the Trust herein created, after forming its judgement based upon all the circumstances of any particular situation as to the wisest and best course to pursue the interest of the Trust and the beneficiaries hereunder, without the necessity of obtaining the consent or permission of any person interested therein, or the consent of or approval of any court, and notwithstanding that the Trustee may also be acting individually, or as Trustee of other trusts, or as agent for other persons or corporations interested in the same matters, or may be interested in connection with the same matters as shareholder, director, or otherwise, provided, however, the Trustee shall exercise such powers at all times in a fiduciary capacity in the interest of the beneficiaries hereunder.

x. The powers herein granted to the Trustee may be exercised in whole or in part, from time to time, and shall be deemed to be supplementary to and not exclusive of the general powers of trustees pursuant to law, and shall include all powers necessary to carry the same into effect.

y. Notwithstanding anything herein contained to the contrary, no powers enumerated herein shall be construed to enable any Transferor/Grantor, or the Trustee, or any of them, or any other person, to purchase, exchange, or otherwise deal with or dispose of all or any part of the principal or income of the Trust for less than full and adequate consideration.

8

Section 3.04. <u>Power to Borrow Money</u>: The Trustee shall have power to borrow money from any person, firm, or corporation, for any trust purpose on such terms and conditions as the Trustee may deem proper and to obligate the trust to repay such borrowed money.

Section 3.05. <u>Power to Loan Money to Trust</u>: The Trustee is authorized to loan or advance its own funds to the trust for any trust purpose. Any such loan or advance, together with the interest accruing on such loan or advance, shall be a first lien against and shall be repaid from the Trust Estate.

Section 3.06. <u>Manner of Holding Trust Securities</u>: The Trustee may hold securities or other property subject to this trust in its name as Trustee under this Agreement, in its own name without a designation showing it to be Trustee under this Agreement, in the name of its nominee, or the Trustee may hold such securities unregistered in such condition that ownership will pass by delivery.

Section 3.07. <u>Determination of Principal and Income</u>: Except as otherwise specifically provided in this Agreement, the Trustee shall have full power and authority to determine, in its sole and absolute discretion, what shall constitute principal of the Trust Estate, gross income from the Trust Estate, and net income of the Trust Estate distributable under the terms of this Agreement. The determination of the Trustee as to what constitutes principal, gross income, or net income of the Trust Estate shall, except as may be otherwise expressly provided in this Agreement, be conclusive and binding on all persons in any manner interested in trust.

Section 3.08. <u>Taxes and Expenses of Trust</u>: All property taxes, assessments, fees, charges, and other expenses incurred by the Trustee in the administration or protection of this trust, including the compensation of the Trustee provided for in this Agreement, shall be a charge on the Trust Estate and shall be paid by the Trustee prior to final distribution of the trust property in full out of the principal or in full out of the income of the Trust Estate, or partially out of the principal and partially out of the income of the Trust Estate, in such manner and proportions as the Trustee in its discretion may determine to be advisable. The determination of the Trustee to pay such expenses and charges from the principal or income of the Trust Estate or partially from each shall be conclusive and binding on all persons in any manner interested in this trust.

9

Section 3.09. <u>No Personal Liability</u>: The Trustee shall not be personally liable for any debts and/or obligations incurred on behalf of the Trust.

Section 3.10. <u>Employment of Attorneys, Managers and Agents</u>: The Trustee shall have the power to employ and to compensate (from the income or principal of the Trust Estate, with the power to allocate, in the Trustee's discretion, such expenses between income and principal of the Trust Estate) attorneys, accountants, appraisers and other managerial, clerical and administrative agents, for any portion of the Trust Estate or in aid of the performance of any duty or exercise of any power of the Trustee hereunder, at the expense of the Trust and not as a personal expense of the Trustee. The Trustee shall not be responsible for any neglect, omission, or wrongdoing of any such agent or employee unless the Trustee fails to use reasonable care in the selection of these persons.

Section 3.11. <u>Unproductive Property</u>: The Trustee is expressly authorized to hold and retain, as an asset of the Trust Estate, unproductive property contributed to this Trust and to purchase, acquire, hold and retain, as an asset of the Trust Estate, unproductive property of every kind and description. The Trustee, in his discretion, may pay expenses and carrying charges attributable to unproductive property out of Trust income or principal, or partly out of income and partly out of principal. For purposes of this Section, "carrying charges" shall include principal paid on any indebtedness, including periodic payments amortizing such indebtedness, and extraordinary repairs or expenses in connection with improvements. "Expenses" shall include all other charges incurred or paid in administering the unproductive property of the Trust.

Section 3.12. <u>Trust Protector:</u> In order to provide for orderly change of jurisdiction of this Trust and replacement of the Trustee, should either be required, a Trust Protector may be appointed by the Trustee, at any time, with the duties and powers set forth, provided, however, that in no case shall the Trust Protector be deemed a Co-Trustee of the Trust by reason of the existence or exercise of the duties and powers conferred herein.

a. In no event shall the Trust Protector be allowed to appoint himself as Trustee.

10

b.   The Trust Protector shall have the duty and be entitled to receive notice of resignation from the Trustee, as provided herein, and to name such successor Trustee in accordance with the provisions of this agreement as he shall, in his sole and absolute discretion, deem proper for continued administration of this Trust.  The Trust Protector shall have the additional duty to take any further action as may be required by the remaining provisions of this Agreement.

c.   The Trust Protector shall appoint his successor or successors by delivery of written notice to the Trustee, which may be in the form of a will or trust, and which shall be effective on such date as shall be specified therein.  Any successor Trust Protector shall take this position subject to the terms and conditions of this Trust Agreement.  The Trust Protector shall have the authority to appoint a Trustee, not the Trustee of this Trust, as a successor Trust Protector.

d.   The Trust Protector shall serve for life or, if a Trust, Corporation or Partnership, the Trust Protector shall serve for a term specified in a written instrument of appointment.

e.   If and whenever and so long as there is no Trust Protector capable of acting, a memorandum to that effect shall be endorsed on and permanently attached to this Agreement and all the provisions of this agreement shall be read and have effect as though the references to the Trust Protector or the consent of the Trust Protector were omitted.

f.   The Trust Protector may direct the Trustee in investing Trust Property, but only to the extent that the exercise of such power is consistent with the provisions relating to the powers and limitations on powers of the Trustee.  The Trust Protector may, at any time prior to the exercise of the power of direction, relinquish said power.

11

## ARTICLE IV

### RIGHTS OF BENEFICIARIES

Section 4.01. <u>Trust Irrevocable</u>: This Trust shall be irrevocable and shall not be subject to amendment.

Section 4.02. <u>Spendthrift Provision</u>: No beneficiary of this Trust shall have any right, power, or authority to alienate, encumber, or hypothecate his or her interest in the principal or income of this Trust in any manner, nor shall such interest of any beneficiary be subject to claims of his or her creditors or liable to attachment, execution, or other process of law.

Section 4.03. <u>Trust Term</u>: This Trust shall terminate twenty (20) years from the date hereof.

12

# ARTICLE V

## TRUSTEESHIP

Section 5.01. Resignation of Trustee: The Trustee shall have the right to resign as Trustee at any time by giving ninety (90) days written notice. Under no circumstance may any Transferor/Grantor or the Trust Protector be appointed a successor Trustee. The Trustee or any successor Trustee shall have the power to appoint a successor Trustee, except as such power may be exercised by the Trust Protector, as provided above.

a. If a Trustee does not designate or appoint a successor Trustee or shall die or, being a corporation, Trust or partnership, be dissolved, or shall desire to be discharged from all or any of the powers hereof, or shall refuse or become incapable of acting herein, then the Trust Protector shall designate a successor Trustee in writing, attaching said appointment to this Agreement.

b. The Trust Protector shall have the overriding power to replace the Trustee at any time either with or without cause, upon giving thirty (30) days written notice thereof to the Trustee.

Section 5.02. Additions to Trust Estate: Subject to the acceptance thereof of Trustee, any person may from time to time assign, transfer, deliver or give additional property to the Trustee, to be held under and subject to all of the terms, conditions, and provisions of this Trust Agreement, which property shall become a part of the Trust Estate upon its acceptance by the Trustee. The Trustee is not required to accept additional property if, in the sole discretion of the Trustee, such property is not suitable or the addition is not appropriate.

Section 5.03. Compensation of Trustee: The Trustee may receive reasonable compensation for its services under this Agreement from time to time.

Section 5.04. Indemnification for Expenses: The Trustee acting hereunder shall not be liable to any Beneficiary or to any heir of any Transferor for Trustee's acts or failure to act, except for willful misconduct or gross negligence. No Trustee shall be liable or responsible for any act, omission, or default of any other Trustee. No bond shall be required of any Trustee hereunder named or appointed, as herein provided, for faithful performance of his services as Trustee.

13

Section 5.05. <u>Liability of Trustee</u>. The Trustee shall not be liable for any act or omission whatsoever of any agent or servant of the Trust. The Trustee shall not be liable for any negligence or error of judgement, or any act of omission, except for his own willful breach of trust. The Trustee shall not be required to give any bond or surety to secure the performance of this Trust. Every act or thing done or remitted and every power exercised or obligation incurred by the Trustee, in the administration of this Trust, or in connection with any business, property, or concern of the Trust, whether ostensively in his name or in the Trust capacity, shall be done, remitted, exercised, or incurred by him as Trustee and not as an individual. Every person contracting or dealing with the Trustee or having any debt, claim, or judgment against the Trustee shall look only to the funds and property of the Trust for payment or satisfaction. No Trustee, officer, or agent of the Trust shall ever be personally liable for or on account of any contract, debt, tort, claim, judgment, or decree arising out of, or preservation of, the Trust Property or the conduct of any business of the Trust, A stipulation or notice to this effect may be inserted in any contract, order, or other instrument made by the Trustee or his agents or attorney-in-fact and on stationary used by the Trustee, but the omission thereof shall not render the Trustee, officer, or agents personally liable.

5.06. <u>Authority of Trustee to Execute Documents</u>.

(a) If at any time there are two trustees of this Trust, they shall act unanimously and any such act shall be binding on the Trust Estate as a whole and may be relied on by third parties dealing with the Trustee.

(b) If at any time there are more than two Trustees of this Trust, any action taken by a majority of the Trustees shall be binding on the Trust Estate and may be relied on by third parties dealing with the Trustees.

14

## ARTICLE VI

### CONSTRUCTION OF TRUST

Section 6.01. Applicable Law: The Trust created by this Agreement has been accepted by the Trustee in the State of California, will be administered by the Trustee and its validity, construction, and all rights under it shall be governed by the laws of the United Kingdom.

Section 6.02. Invalidity of Any Provision: Should any provision of this Agreement be or become invalid or unenforceable, the remaining provisions of this Agreement shall be and continue to be fully effective.

Section 6.03. Notices: Any notices or other communications required or permitted by this Agreement to be delivered to or served on and received by the Trustee shall be effective when personally delivered to the Trustee, or, in lieu of such personal service, when mailed, certified with postage prepaid, addressed to the Trustee.

Effective this 11ᵗʰ day of November, 1981.

Trustee:

By: _____

STATE OF CALIFORNIA
COUNTY OF Los Angeles } ss.

On this 28th day of February, in the year 1991
before me, the undersigned, a Notary Public in and for said County and State,
personally appeared HENRY C. WALTERS

personally known to me (or proved to me on the basis of satisfactory evidence) to
be the person whose name is subscribed to this instrument, and acknowledged
that he (she or they) executed it.

Signature _____
Notary Public in and for said County and State

SOUTHLAND TITLE
CORPORATION



FOR NOTARY SEAL OR STAMP

OFFICIAL SEAL
SUSAN KELEDJIAN
NOTARY PUBLIC CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires July 11, 1994

16

<u>Schedule "A"</u>

<u>Trust Estate</u>:

The initial sum of $ 1,000 United States Dollars and such other property as this Trust, Coventry International, Ltd., may acquire from time to time.

17

Schedule "B"

Allocable
Beneficial
Beneficiary:                                                    Interest

Henry Wallers                                    *

Henry Wallers, Trustee, Coventry Trust Enterprise
u/d/t dated 11 November 1981


Allocable Beneficial Interest:    *

As may be determined by the Trustee, from time to time, in the
Trustee's sole and absolute discretion in accordance with Article
II hereof.

18

## APPOINTMENT OF TRUST PROTECTOR

                                  Coventry International, Ltd aka
                                Coventry International
        The undersigned, Trustee, _____ TRUST U/D/T dated <u>11 Nov 1981</u> pursuant to Article III Section 3.12 et. seq. of the Trust Agreement hereby appoints <u>William A. Malis</u> as Trust Protector with all rights, powers and privileges appertaining thereto.

        IN WITNESS whereof this appointment of Trust Protector is effective this <u>First</u> day of <u>September, 1992</u> .

                       <u>Coventry International</u> TRUST U/D/T
                       <u>Ltd.</u>
                       dated <u>11 November, 1981</u> .

                    By: _____
                            Trustee

# EXHIBIT "C"

COVENTRY INTERNATIONAL

HENRY WALLERS hereby declares to be the Trustee of all the property described in an inventory hereto attached, marked Schedule A, constituting, together with any other property that may become subject to this Agreement, the Trust Estate of an express trust and to be held, administered, and distributed by the Trustee as provided in this Agreement.

## ARTICLE I

### TRUST PROPERTY

Section 1.01. <u>Nature of Property</u>: The Transferor has transferred and delivered, or will transfer and deliver, to the Trustee, without consideration, the property described in Schedule A, attached hereto and incorporated herein.

Section 1.02. <u>Right to Make Additions to Trust</u>: The Transferor or any other person shall have the right at any time, either during life or by Will, to add other property acceptable to the Trustee to the trust created by this Agreement and such property, when received and accepted by the Trustee, shall become a part of the Trust Estate.

## ARTICLE II

### DISTRIBUTIONS BY TRUSTEE

Section 2.01.  **Distribution of Income**:  The annual net income of the Trust Estate, if any, may be distributed or accumulated by the Trustee and added to the principal of the Trust Estate as the Trustee may determine, from time to time, in its sole and absolute discretion.

Section 2.02.  **Separate Trusts**:  This Trust is to be considered and administered as a separate Trust for each Beneficiary of this trust mentioned in Schedule "B" attached hereto and incorporated herein.

Section 2.03.  **Invasion of Principal**:  Should any beneficiary of this Trust at any time be, for any reason, in need of funds for his proper care, maintenance, or support, the Trustee may in the Trustee's sole and absolute discretion pay to or apply for the benefit of the Beneficiary such amounts from the principal of the Trust Estate, up to the whole thereof, as the Trustee may, from time to time, in the Trustee's sole and absolute discretion, deem necessary or advisable for the proper care, maintenance, support, or general welfare of the Beneficiary.

Section 2.04.  **Distribution of Principal**:  Upon the expiration of the term mentioned herein, this Trust shall terminate and all the Trust Estate then in the possession of the Trustee, shall go and be, by the Trustee, transferred, conveyed, and distributed in fee, free of trust, to each Beneficiary of this Trust.

3

Section 2.05. <u>Death of Beneficiary</u>: Should the Beneficiary expire before the expiration of the term mentioned herein, the Trust Estate then in the possession of the Trustee, including any accumulated or undistributed net income of the Trust Estate, shall be held in trust and administered, by the Trustee, for the benefit, in accordance with the terms of this Trust, of such person, including the estate of the Beneficiary, the creditors of the Beneficiary, or the creditors of the estate of the Beneficiary, as the Beneficiary may appoint by specific reference to this power of appointment in a written instrument signed and delivered to the Trustee prior to the death of the Beneficiary or in the Beneficiary's last Will.

Section 2.06. <u>Takers in Default of Appointment</u>: Should the Beneficiary expire without effectively exercising in whole or in part, the power of appointment described in Section 2.05 of this Agreement, any unappointed portion of the principal of the Trust Estate then in the possession of the Trustee, any unappointed portion of the accumulated net income of the Trust Estate, and any unappointed portion of the undistributed net income of the Trust Estate, shall go and be, by the Trustee, transferred, conveyed, and distributed in fee to the estate of the Beneficiary.

4

ARTICLE III

POWERS OF TRUSTEE

Section 3.01. <u>Retain Investments of Transferor</u>: The Trustee is authorized to retain in the Trust for such time as it may deem advisable any property received by it from any Transferor or any other person, whether or not such property is of the character permitted by law for the investment of trust funds, and to operate at the risk of the Trust Estate any business or property received by it from the Transferor.

Section 3.02. <u>Reserved</u>.

Section 3.03. <u>Management of Trust Property</u>: The Trustee shall with respect to any and all property which may at any time be held by it in trust pursuant to this Agreement, whether such property constitutes principal or accumulated income of the Trust Estate, have power, exercisable in the Trustee's discretion at any time and from time to time on such terms and in such manner as Trustee may deem advisable, to:

a. Sell, convey, exchange, purchase, convert, improve, repair, manage, operate, and control any trust property.

b. Lease for terms within or beyond the term of this trust and for any purpose, including exploration for and removal of gas, oil, and other minerals; and enter into any covenants and agreements relating to the property so leased or any improvements which may then or thereafter be erected on such property.

c. Encumber or hypothecate for any trust purpose by mortgage, deed of trust, pledge, or otherwise.

d. Carry insurance of such kinds and in such amounts at the expense of the trust as the Trustee may deem advisable.

e. Commence or defend at the expense of the trust such litigation with respect to the trust or any property of the Trust Estate as it may deem advisable.

5

f. Invest and reinvest the trust funds in such property as the Trustee may deem advisable, whether or not of the character permitted by law for the investment of trust funds, specifically including, but not by way of limitation, interests, if any, in any common trust fund or funds now or hereafter established and administered by the Trustee solely for the investment of trust funds, provided the Trustee is a person or entity other than the Transferor or his spouse.

g. Vote and give proxies to vote any securities, including stock of the Trustee, if any, having voting rights that constitute part of the Trust Estate.

h. Pay any assessments or other charges levied on any stock or other security held by it in trust pursuant to this Agreement.

i. Exercise any subscription, conversion, or other rights or options which may at any time attach, belong, or be given to the holders of any stocks, bonds, securities, or other instruments forming part of the Trust Estate.

j. Participate in any plans or proceedings for the foreclosure, reorganization, consolidation, merger, or liquidation of any corporation or organization that has issued securities that are part of the Trust Estate, and incident to such participation to deposit securities with and transfer title of securities to any protective or other committee established to further or defeat any such plan or proceeding.

k. Enforce any mortgage or deed of trust or pledge held by it in trust pursuant to this Agreement and at any sale under any such mortgage, deed of trust, or pledge to bid and purchase for and at the expense of the trust any property subject to such security instrument.

l. Compromise, submit to arbitration, release with or without consideration, and otherwise adjust any claims in favor of or against the trust.

m. Subject to any limitations expressly set forth in this Agreement and the faithful performance of its fiduciary obligations, do all such acts, take all such proceedings, and exercise all such rights and privileges as could be done, taken, or exercised by an absolute owner of the trust property.

n. Form and/or enter into, from time to time, one or more partnerships, limited or general.

6

o. Without regard to diversification, to invest principal funds and income if accumulated, in, and to retain for the account of the trust, such properties as men of prudence, discretion and intelligence purchase for their own account, having regard not to speculation but to the permanent disposition of their funds, and considering the probable income, as well as the probable safety of their capital; including, but not by way of limitation, real property or interests therein, corporate bonds and debentures, and stocks, preferred or common; also shares or interests in investment companies or trusts.

p. Lease trust property on such terms as the Trustee may deem proper and even for terms extending beyond the life of the trust created hereunder; and to construct buildings or improvements, or to join with any co-owner or tenant in the construction thereof.

q. Receive and accept, for the purposes of the trust created hereunder, additional money, securities or other property or interests therein from any donor. The Trustee shall incur no obligation or liability on account of such retention, regardless of the length thereof, the reason therefor, or the degree or lack of care exercised in making the decision to retain the same.

r. Invest, reinvest or retain all of the assets of the trust created hereunder, regardless of the fact that generally diversification is desirable, in a single security, loan, limited partnership, investment or business organization if the Trustee in his uncontrolled discretion, deems it to be advisable and proper; and to retain all or any part of the assets of the trust created hereunder in cash and on deposit in banks and uninvested, if the Trustee in its discretion deems it advisable.

s. Hold securities or other property in its own name or in the name of its nominee, without disclosing any fiduciary relation; to purchase, sell and trade in securities, options, and/or commodities or contracts in commodities of any nature on margin or otherwise, including short sales, and, for such purpose, shall have the power to maintain and operate security and commodity margin accounts with brokers and may pledge any security or other trust property as collateral for any such margin or commodity account. In furtherance of such powers, the Trustee may hold securities or other property in the Trustee name, as Trustee under this Declaration of Trust, or in the name of a nominee or in a street name or unregistered in such condition that ownership will pass.

7

t.   Grant a power of attorney to such individuals and institutions upon such terms as it deems appropriate.

u.   To engage in business with the property of the Trust as sole proprietor, or as general or limited partner, with all the powers customarily exercised by an individual so engaged in business, and to hold an undivided interest in any property as tenant in common or as tenant in partnership.

v.   To make any division or distribution as required under the terms of this Agreement, in kind or in money, or partly in kind or partly in money, as the Trustee seems proper in its absolute discretion, and the Trustee's judgement as to the value of such shares, securities, or other property so allotted shall be conclusive on all parties.   The Trustee shall not be required to make any provision on account of the diminution or increase in value of any securities or investment at any time constituting a part of the Trust herein created.

w.   The Trustee may frequently act under any or all of the powers of this Agreement in all matters concerning the Trust herein created, after forming its judgement based upon all the circumstances of any particular situation as to the wisest and best course to pursue the interest of the Trust and the beneficiaries hereunder, without the necessity of obtaining the consent or permission of any person interested therein, or the consent of or approval of any court, and notwithstanding that the Trustee may also be acting individually, or as Trustee of other trusts, or as agent for other persons or corporations interested in the same matters, or may be interested in connection with the same matters as shareholder, director, or otherwise, provided, however, the Trustee shall exercise such powers at all times in a fiduciary capacity in the interest of the beneficiaries hereunder.

x.   The powers herein granted to the Trustee may be exercised in whole or in part, from time to time, and shall be deemed to be supplementary to and not exclusive of the general powers of trustees pursuant to law, and shall include all powers necessary to carry the same into effect.

y.   Notwithstanding anything herein contained to the contrary, no powers enumerated herein shall be construed to enable any Transferor/Grantor, or the Trustee, or any of them, or any other person, to purchase, exchange, or otherwise deal with or dispose of all or any part of the principal or income of the Trust for less than full and adequate consideration in money, or money's worth, or to enable the Transferor/Grantor to borrow all or any part of the principal of the income of the Trust, directly or indirectly, without adequate interest or security.  Except for such powers as are held by the Trust Protector, no person, other than the Trustee, shall have or exercise the power to vote or to direct the voting of shares or other securities of the Trust, to control

the investment of the Trust either by directing investments or reinvestments or by vetoing proposed investments or reinvestments, or to reacquire or exchange any property of the Trust by substituting other property of an equivalent value.

Section 3.04. <u>Power to Borrow Money</u>: The Trustee shall have power to borrow money from any person, firm, or corporation, for any trust purpose on such terms and conditions as the Trustee may deem proper and to obligate the trust to repay such borrowed money.

Section 3.05. <u>Power to Loan Money to Trust</u>: The Trustee is authorized to loan or advance its own funds to the trust for any trust purpose. Any such loan or advance, together with the interest accruing on such loan or advance, shall be a first lien against and shall be repaid from the Trust Estate.

Section 3.06. <u>Manner of Holding Trust Securities</u>: The Trustee may hold securities or other property subject to this trust in its name as Trustee under this Agreement, in its own name without a designation showing it to be Trustee under this Agreement, in the name of its nominee, or the Trustee may hold such securities unregistered in such condition that ownership will pass by delivery.

Section 3.07. <u>Determination of Principal and Income</u>: Except as otherwise specifically provided in this Agreement, the Trustee shall have full power and authority to determine, in its sole and absolute discretion, what shall constitute principal of the Trust Estate, gross income from the Trust Estate, and net income of the Trust Estate distributable under the terms of this Agreement. The determination of the Trustee as to what constitutes principal, gross income, or net income of the Trust Estate shall, except as may be otherwise expressly provided in this Agreement, be conclusive and binding on all persons in any manner interested in trust.

Section 3.08. <u>Taxes and Expenses of Trust</u>: All property taxes, assessments, fees, charges, and other expenses incurred by the Trustee in the administration or protection of this trust, including the compensation of the Trustee provided for in this Agreement, shall be a charge on the Trust Estate and shall be paid by the Trustee prior to final distribution of the trust property in full out of the principal or in full out of the income of the Trust Estate, or partially out of the principal and partially out of the income of the Trust Estate, in such manner and proportions as the Trustee in its discretion may determine to be advisable. The determination of the Trustee to pay such expenses and charges from the principal or income of the Trust Estate or partially from each shall be conclusive and binding on all persons in any manner interested in this trust.

9

Section 3.09. <u>No Personal Liability</u>: The Trustee shall not be personally liable for any debts and/or obligations incurred on behalf of the Trust.

Section 3.10. <u>Employment of Attorneys, Managers and Agents</u>: The Trustee shall have the power to employ and to compensate (from the income or principal of the Trust Estate, with the power to allocate, in the Trustee's discretion, such expenses between income and principal of the Trust Estate) attorneys, accountants, appraisers and other managerial, clerical and administrative agents, for any portion of the Trust Estate or in aid of the performance of any duty or exercise of any power of the Trustee hereunder, at the expense of the Trust and not as a personal expense of the Trustee. The Trustee shall not be responsible for any neglect, omission, or wrongdoing of any such agent or employee unless the Trustee fails to use reasonable care in the selection of these persons.

Section 3.11. <u>Unproductive Property</u>: The Trustee is expressly authorized to hold and retain, as an asset of the Trust Estate, unproductive property contributed to this Trust and to purchase, acquire, hold and retain, as an asset of the Trust Estate, unproductive property of every kind and description. The Trustee, in his discretion, may pay expenses and carrying charges attributable to unproductive property out of Trust income or principal, or partly out of income and partly out of principal. For purposes of this Section, "carrying charges" shall include principal paid on any indebtedness, including periodic payments amortizing such indebtedness, and extraordinary repairs or expenses in connection with improvements. "Expenses" shall include all other charges incurred or paid in administering the unproductive property of the Trust.

Section 3.12. <u>Trust Protector</u>: In order to provide for orderly change of jurisdiction of this Trust and replacement of the Trustee, should either be required, a Trust Protector may be appointed by the Trustee, at any time, with the duties and powers set forth, provided, however, that in no case shall the Trust Protector be deemed a Co-Trustee of the Trust by reason of the existence or exercise of the duties and powers conferred herein.

a. In no event shall the Trust Protector be allowed to appoint himself or any related person as Trustee.

b.  The Trust Protector shall have the duty and be entitled to receive notice of resignation from the Trustee, as provided herein, and to name such successor Trustee in accordance with the provisions of this agreement as he shall, in his sole and absolute discretion, deem proper for continued administration of this Trust.  The Trust Protector shall have the additional duty to take any further action as may be required by the remaining provisions of this Agreement.

c.  The Trust Protector shall appoint his successor or successors by delivery of written notice to the Trustee, which may be in the form of a will or trust, with notice, which shall be effective on such date as shall be specified therein.  Any successor Trust Protector shall take this position subject to the terms and conditions of this Trust Agreement.  The Trust Protector shall have the authority to appoint a Trustee, not the Trustee of this Trust, as a successor Trust Protector.

d.  The Trust Protector shall serve for life or, if appointed by an instrument, shall serve for a term specified in the written instrument.

e.  If and whenever and so long as there is no Trust Protector capable of acting, a memorandum to that effect shall be endorsed on and permanently attached to this Agreement and all the provisions of this agreement shall be read and have effect as though the references to the Trust Protector or the consent of the Trust Protector were omitted.

f.  The Trust Protector may direct the Trustee in investing Trust Property, but only to the extent that the exercise of such power is consistent with the provisions relating to the powers and limitations on powers of the Trustee and would not result in the Trust Property being included in any Transferor/Grantor estate under the provisions of any Revenue Law. The Trust Protector may, at any time prior to the exercise of the power of direction, relinquish said power.

11

## ARTICLE IV

### RIGHTS OF BENEFICIARIES

Section 4.01. <u>Trust Irrevocable</u>: This Trust shall be irrevocable and shall not be subject to amendment.

Section 4.02. <u>Spendthrift Provision</u>: No beneficiary of this Trust shall have any right, power, or authority to alienate, encumber, or hypothecate his or her interest in the principal or income of this Trust in any manner, nor shall such interest of any beneficiary be subject to claims of his or her creditors or liable to attachment, execution, or other process of law.

Section 4.03. <u>Trust Term</u>: This Trust shall terminate twenty (20) years from the date hereof.

12

## ARTICLE V

## TRUSTEESHIP

Section 5.01. Resignation of Trustee: The Trustee shall have the right to resign as Trustee at any time by giving ninety (90) days written notice. Under no circumstance may any Transferor/Grantor or the Trust Protector be appointed a successor Trustee. The Trustee or any successor Trustee shall have the power to appoint a successor Trustee, except as such power may be exercised by the Trust Protector, as provided above.

a. If a Trustee does not designate or appoint a successor Trustee or shall die or, being a corporation or partnership, be dissolved, or shall desire to be discharged from all or any of the powers hereof, or shall refuse or become incapable of acting herein, then the Trust Protector shall designate a successor Trustee in writing, attaching said appointment to this Agreement.

b. The Trust Protector shall have the overriding power to replace the Trustee at any time either with or without cause, upon giving thirty (30) days written notice thereof to the Trustee except that such removal and replacement shall be in accordance with Article III of this Trust.

Section 5.02. Additions to Trust Estate: Subject to the acceptance thereof of Trustee, any person may from time to time assign, transfer, deliver or give additional property to the Trustee, to be held under and subject to all of the terms, conditions, and provisions of this Trust Agreement, which property shall become a part of the Trust Estate upon its acceptance by the Trustee. The Trustee is not required to accept additional property if, in the sole discretion of the Trustee, such property is not suitable or the addition is not appropriate.

Section 5.03. Compensation of Trustee: The Trustee may receive reasonable compensation for its services under this Agreement from time to time.

Section 5.04. Indemnification for Expenses: The Trustee acting hereunder shall not be liable to any Beneficiary or to any heir of any Transferor for Trustee's acts or failure to act, except for willful misconduct or gross negligence. No Trustee shall be liable or responsible for any act, omission, or default of any other Trustee. No bond shall be required of any Trustee hereunder named or appointed, as herein provided, for faithful performance of his services as Trustee.

13

Section 5.05. <u>Liability of Trustee</u>. The Trustee shall not be liable for any act or omission whatsoever of any agent or servant of the Trust. The Trustee shall not be liable for any negligence or error of judgement, or any act of omission, except for his own willful breach of trust. The Trustee shall not be required to give any bond or surety to secure the performance of this Trust. Every act or thing done or remitted and every power exercised or obligation incurred by the Trustee, in the administration of this Trust, or in connection with any business, property, or concern of the Trust, whether ostensively in his name or in the Trust capacity, shall be done, remitted, exercised, or incurred by him as Trustee and not as an individual. Every person contracting or dealing with the Trustee or having any debt, claim, or judgment against the Trustee shall look only to the funds and property of the Trust for payment or satisfaction. No Trustee, officer, or agent of the Trust shall ever be personally liable for or on account of any contract, debt, tort, claim, judgment, or decree arising out of, or preservation of, the Trust Property or the conduct of any business of the Trust, A stipulation or notice to this effect may be inserted in any contract, order, or other instrument made by the Trustee or his agents or attorney-in-fact and on stationary used by the Trustee, but the omission thereof shall not render the Trustee, officer, or agents personally liable.

5.06. <u>Authority of Trustee to Execute Documents</u>.

(a) If at any time there are two trustees of this Trust, they shall act unanimously and any such act shall be binding on the Trust Estate as a whole and may be relied on by third parties dealing with the Trustee.

(b) If at any time there are more than two Trustees of this Trust, any action taken by a majority of the Trustees shall be binding on the Trust Estate and may be relied on by third parties dealing with the Trustees.

14

## ARTICLE VI

## CONSTRUCTION OF TRUST

      Section 6.01.  **Applicable Law:**  The Trust created by this Agreement has been accepted by the Trustee in the State of California, will be administered by the Trustee and its validity, construction, and all rights under it shall be governed by the laws of the ___UNITED  KINGDOM_____.

      Section 6.02.  **Invalidity of Any Provision:**  Should any provision of this Agreement be or become invalid or unenforceable, the remaining provisions of this Agreement shall be and continue to be fully effective.

      Section  6.03.   **Notices:**   Any notices or other communications required or permitted by this Agreement to be delivered to or served on and received by the Trustee shall be effective when personally delivered to the Trustee, or, in lieu of such personal service, when mailed, certified with postage prepaid, addressed to the Trustee.

Effective this 19TH day of July , 19 92

Trustee: HWallers

By: HWallers

Orginal signature: H Wallers

Zurich, October 13, 1992

Signed in the presence of

H Feramant

16

## Schedule "A"

**Trust Estate:**

500 000 POUNDS STERLING

17

## Schedule "B"

Beneficiary

HENRY WALLERS
HENRY WALLERS TRUSTEE
Go VENTRY TRUST ENTERPRISE
u/o IT dated 11, NOVEMBER 1981

Allocable
Beneficial
Interest

18

# EXHIBIT "D"

DATED

15.04.2008

**LOUISE WALLERS**

**DEED OF APPOINTMENT OF TRUSTEE**
in relation to the Coventry International Trust

**TAYLOR WESSING LLP**
Carmelite
50 Victoria Embankment
Blackfriars
London EC4Y 0DX

+44 (0)20 7300 7000
+44 (0)20 7300 7100
DX 41 London

## DEED OF APPOINTMENT OF TRUSTEE

**DATE:** April 15, 2008

**BY:**

LOUISE WALLERS of Appartement 3010 Résidence Parc Cordier  14360 Trouville-sur-mer (the "Appointor")

**RECITALS**

(A)  This Deed is supplemental to the declaration of trust made by Henry Coventry Wallers (the "Settlor") on 11 July 1992 (the "Settlement").

(B)  By the Settlement, the Settlor appointed himself as the first trustee of the settlement and no further or successor trustees were appointed during his lifetime.

(C)  Section 3.12 of the Settlement provides that the trustee may appoint a person to the office of Trustee Protector but no appointment has been made to such office.

(D)  The Settlor died on 24 February 1993.

(E)  As a result of the matters recited above, there is currently no trustee of the Settlement.

(F)  By section 36(1) of the Trustee Act 1925, in such circumstances, the personal representatives of the last surviving trustee may, by writing, appoint one or more other persons (whether or not being the persons exercising the power) to be a trustee or trustees in the place of the trustee so deceased.

(G)  The Appointor is the sole heir of the deceased in relation to personal and real property situate in Switzerland and therefore the person with authority to administer such assets.

(H)  The Appointor wishes to exercise the abovementioned power as herein provided.

**OPERATIVE PROVISION**

In exercise of the power conferred by section 36(1) of the Trustee Act 1925 and all others (if any), the Appointor hereby appoints herself as trustee of the Settlement.

Signed as a Deed and delivered by        )
**LOUISE WALLERS**                                  )
in the presence of:                                      )

**Witness**

Signature: _[signature]_                                    _Louise Wallers_

Name:  BARANDUN Nicola

Address:  Seefeldstr. 45, 8008 Zurich

Occupation:  Attorney at Law

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| James R. Ebert (Bar # 105634)<br>KITAGAWA & EBERT, P.C.<br>8001 Irvine Center Drive, Suite 960<br>Irvine, CA 92618<br>TELEPHONE NO.: (949) 788-9980   FAX NO.: (949) 788-0918<br>ATTORNEY FOR (Name): HAIG KELEDJIAN, Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Central Judicial District

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

SEP 16 2010

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy
Shaunya Wesley

CASE NAME:
Haig Keledjian et al. vs. BSI SA et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC445694 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[X] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action (specify): SIX (6)
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 15, 2010

James R. Ebert
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
* Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
* File this cover sheet in addition to any cover sheet required by local court rule.
* If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
* Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

LexisNexis® Automated California Judicial Council Forms

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
            or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

*LexisNexis® Automated California Judicial Council Forms*

| SHORT TITLE: | CASE NUMBER |
|---|---|
| HAIG KELEDJIAN et al. vs. BSI SA et al. | |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 10  ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | | 2.<br>2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | | 1., 2., 4.<br>1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | | 1., 2., 4.<br>1., 2., 4.<br>1., 2., 3.<br>1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | | 1., 2., 3. |
| | Fraud (16) | ☑ A6013  Fraud (no contract) | | 1.②, 3. |

LACIV 109  (Rev. 01/07)
LASC Approved 03-04

## CIVIL CASE COVER SHEET ADDENDUM
## AND STATEMENT OF LOCATION

LASC, rule 2.0

Page 1 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| HAIG KELEDJIAN et al. vs. BSI SA et al. | |

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer- Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| HAIG KELEDJIAN et al. vs. BSI SA et al. | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

| SHORT TITLE: HAIG KELEDJIAN et al. vs. BSI SA et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 2290 Huntington Drive, Suite 100 |
|---|---|
| CITY: San Marino | STATE: CA | ZIP CODE: 91108 |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Stanley Mosk</u> courthouse in the <u>Central Judicial</u> District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>September 15, 2010</u>

(SIGNATURE OF ATTORNEY/FILING PARTY)

---

### PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

1

## **PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

3

        I, the undersigned, declare that I am over the age of 18 and not a party to the within cause.  I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California.  My business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California  90071-1560.

4

5

        On November 18, 2010, I served upon the interested party(ies) in this action the foregoing document(s) described as:

6

7

        **Notice of Removal of Action to Federal Court**

8

9

☒  By placing ☐ the original(s) ☒ a true and correct copy(ies) thereof, as set out below, in an addressed, sealed envelope(s) clearly labeled to identify the person(s) being served at the address(es) set forth on the attached service list.

10

11

☐  **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such envelope(s) to be placed in interoffice mail for collection and deposit in the United States Postal Service at 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California, on that same date, following ordinary business practices.  I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

12

13

14

15

16

☒  **BY FEDERAL EXPRESS PRIORITY OVERNIGHT DELIVERY (AS INDICATED ON ATTACHED SERVICE LIST)** I delivered the sealed Federal Express envelope(s) to an employee authorized by Federal Express to receive documents, with delivery fees paid or provided for.

17

18

☒  **BY MESSENGER** (Messenger Service caused to be delivered as indicated on Service List.)

19

20

☒  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

21

22

23

24

25

26

27

28

1

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>SERVICE LIST</u>

James R. Ebert
KITAGAWA & EBERT, P.C.
8001 Irvine Center Drive, Suite 960          (Via Hand Delivery)
Irvine, CA 92618

HAIG KELEDJIAN
2290 Huntington Drive, Suite 100          (Via Hand Delivery)
San Marino, CA 91108

Thomas R. Pender
Cremer Spina
190 North LaSalle Street, Suite 3300          (Via Federal Express)
Chicago, IL 60601

Keith L. Meeker
7777 Alvarado Road, Suite 720          (Via Federal Express)
La Mesa, CA 91942

Executed on November 18, 2010, at Los Angeles, California.

_____
Lori Cruz

- 2 -

## PROOF OF SERVICE BY HAND

I, Lori Cruz, declare:

1.     I am over the age of 18 and not a party to the within cause.  I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California.  My business address is 355 S. Grand Ave., Suite 3500, Los Angeles, CA 90071.

2.     On November 18, 2010, I placed the below said document with Time Machine Messenger Service for personal delivery to the following addresses listed below.

**NOTICE TO PLAINTIFF OF REMOVAL OF ACTION TO FEDERAL COURT**

James R. Ebert
KITAGAWA & EBERT, P.C.
8001 Irvine Center Drive, Suite 960
Irvine, CA 92619

HAIG KELEDJIAN
2290 Huntington Drive, Suite 100
San Marino, CA 91108

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 18, 2010, at Los Angeles, California.

_____
Lori Cruz

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV10- 8891 R (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** 312 N. Spring St., Rm. G-8 Los Angeles, CA 90012 | [ ] **Southern Division** 411 West Fourth St., Rm. 1-053 Santa Ana, CA 92701-4516 | [ ] **Eastern Division** 3470 Twelfth St., Rm. 134 Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Haig Keledjian | BSI SA; F. Di Pietro; B. Ammann; Assicurazioni Generali; Agora, Inc.; Nicola Barandun; Barundun Hess von Grafenried; Damiano Brusa; CMS von Erlach Klainguti Stettler Wille; Andrew Goodman; Taylor Wessing LLP; Does 1-100 |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>See attachment. | Attorneys (If Known)<br><br>See attachment. |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☑ **MONEY DEMANDED IN COMPLAINT:** $ 6,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☑ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: CV10-8891

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)      CIVIL COVER SHEET      Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff resides in the County of Los Angeles on information and belief. | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| N/A | See attachment. |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| N/A | All claims arose in Switzerland on information and belief. |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
<u>Note: In land condemnation cases, use the location of the tract of land involved</u>

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Brad D. Brian / rcc_____ Date _11/18/2010_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# Civil Cover Sheet

## Attachment

### I(b) Counsel for Plaintiff Haig Keledjian

JAMES R. EBERT
KITAGAWA & EBERT, P.C.
8001 Irvine Center Drive, Suite 960
Irvine, CA 92618
Tel: (949) 788-9980

HAIG KELEDJIAN
2290 Huntington Drive, Suite 100
San Marino, CA 91108
Tel: (323) 682-2171

### Counsel for Defendants BSI SA, F. Di Pietro, B. Ammann, Assicurazioni Generali, Damiano Brusa, and CMS von Erlach Henrici AG

BRAD D. BRIAN (State Bar No. 079001)
Brad.Brian@mto.com
TAMERLIN J. GODLEY (State Bar No. 194507)
Tamerlin.Godley@mto.com
RICHARD C. CHEN (State Bar No. 270715)
Richard.Chen@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100

### Counsel for Defendants Andrew Goodman and Taylor Wessing LLP

JOHN W. SHELLER
HINSHAW & CULBERTSON LLP
11601 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Tel: (310) 909-8000

### Counsel for Defendants Nicola Barandun and Barandun Hess von Grafenried

THOMAS R. PENDER
CREMER SPINA
180 North LaSalle Street, Suite 3300
Chicago, IL 60601
Tel: (312) 980-3015

## Counsel for Defendant Agora, Inc.

KEITH L. MEEKER
7777 Alvarado Road, Suite 720
La Mesa, CA 91942
Tel: (619) 461-2181

MICHAEL E. GELTNER (*pro hac vice*)
GELTNER & ASSOCIATES, P.C.
105 N. Virginia Avenue, #305
Falls Church, VA 22046

## IX(b) California County outside of this District; State, if other than California; or Foreign Country

On information and belief:
Defendant BSI SA is incorporated and has its principal place of business in Switzerland.
Defendant F. Di Pietro resides in Switzerland.
Defendant B. Ammann resides in Switzerland.
Assicurazioni Generali is incorporated and has its principal place of business in Italy.
Defendant Agora, Inc., is incorporated in Maryland and has its principal place of business in Maryland.
Defendant Nicola Barandun resides in Switzerland.
All partners of Defendant Barandun Hess von Grafenried reside in Switzerland or otherwise not in California.
Defendant Damiano Brusa resides in Switzerland.
All partners/shareholders of Defendant CMS von Erlach Henrici AG reside in Switzerland or otherwise not in California.
Defendant Andrew Goodman resides in the United Kingdom.
All partners of Defendant Taylor Wessing LLP reside in the United Kingdom, Germany, France, Belgium, Dubai, Poland, China, or otherwise not in California.